**Grace AMBURGEY, Plaintiff,**

v.

**Clifford R. CASSADY, Individually and as Superintendent of the Rowan County Board of Education, et al., Defendants.**

**Civ. A. No. 1075.**

United States District Court,
E. D. Kentucky,
Catlettsburg Division.

Feb. 4, 1974.

Arthur Brooks, Brooks, Sullivan & Molloy, Lexington, Ky., for plaintiff.

Thomas R. Burns, Morehead, Ky., for defendants.

HERMANSDORFER, District Judge.

This is a civil rights action brought under 42 U.S.C. § 1983 and 28 U.S.C. § 1343 by Grace Amburgey, plaintiff, charging that her First and Fourteenth Amendment rights have been violated by the failure of the defendants to reemploy her in the Rowan County, Kentucky school system for the school year 1972–1973. The defendants are the Superintendent of Schools, Clifford R. Cassady, the Rowan County Board of Education, and four of the five individual Board members.

Grace Amburgey was a non-tenured teacher in the Rowan County High School at Morehead, Kentucky working as librarian. Her employment with that Board began with the school year 1969–1970 and at the time of termination she had been employed for three years. Her professional competence is admitted. Pursuant to local law she was given written notice that she would not be recommended for reemployment dated May 4, 1972 which she received on May 10, 1972. At her request more specific reasons for her not being recommended were furnished by letter dated June 12, 1972.

The entire body of evidence is sketchy and devoid of meaningful dates and details. It is impossible for the Court to establish any chronology of events except in the most general of terms. Plaintiff's conduct may be divided into two time periods: the first touches upon her announced political activities in opposition to the defendant Superintendent's administration of the school system during the nebulous period of 1969 to 1971. This period is punctuated by the defendant Superintendent's recommendation that she be reemployed for the school year 1971-1972. The second time period covers the year 1972. Plaintiff admits, but seeks to explain away, four of the six reasons cited for her non-reemployment in the letter of June 12, 1972 (plaintiff's Exhibit 1) which,

on Principal Risner's testimony, occurred during 1972.

## I.

Notwithstanding that the defendant Superintendent recommended plaintiff for reemployment after her maximum period of active political opposition to him and the Board, plaintiff contends that the true reason for his failure to recommend her for reemployment was to punish her for such political activity and criticism. The fact of her political opposition is not disputed. It is clear that it began shortly after her employment in 1969 and used as its primary vehicle an organization called "Save Our Schools". Moreover, as plaintiff contends, the Court finds that the defendant Superintendent was aware of her activities. By way of explanation it needs to be stated parenthetically that the phenomena of Kentucky school politics in dominantly rural areas is such that no Superintendent or Board member can long survive without being aware of the sentiments in his bailiwick. Mr. Cassady has survived for eighteen years as Superintendent of the same school district; and, based on this Court's several years of school board related experience, Mr. Cassady at least knew of the generalities of Mrs. Amburgey's efforts and objectives. It is undisputed, however, that at a time after Mr. Cassady knew of plaintiff's political machinations, he recommended her for reemployment. Although the facts warrant the inference of the Superintendent's knowledge, they do not warrant the inference or raise a suspicion that he is a devious person.

In weighing plaintiff's primary argument of political retribution, the inferential values of several factors become significant. The point in time of her self-styled political activities in terms of the time of termination militate against a cause and effect conclusion. Plaintiff's activities commenced upon or shortly after she was initially employed. She was reemployed twice thereafter. No evidence suggests any political conduct during the year of her final employment. Although plaintiff intimates that her activities on behalf of Dr. Proudfoot, the only Board member not made a party defendant, were important in Mr. Cassady's decision, it is significant that Dr. Proudfoot, who was elected in November of 1970 and took office in 1971, did not testify contrary to any other Board member. He did not say that Mr. Cassady contacted him about Mrs. Amburgey or made any statements indicating an intent to punish or discipline her. In fact, no witness attributed to the Superintendent or any Board member any remarks about Mrs. Amburgey. In his testimony, the Superintendent noted that others were involved in the "Save Our Schools" organization. Although there was some testimony that Mrs. Amburgey was a leader in the political maneuverings, there is no basis to measure the political effectiveness of such activity. It is true that the testimony shows one Board member resigned during the pendency of a conflict of interest charge and the composition of the Board has changed, but it is also true that Mr. Cassady is still the Superintendent of Schools and that the present Board by a vote of four to one accepted his recommendation not to reemploy the plaintiff. Specifically, weighing the evidence in terms of probabilities as between the reasons given for discharge which have been admitted by plaintiff in immediate point of time with respect to her termination and the probabilities that termination resulted from her political activities which crested with the November 1970 general election, there is no basis in fact or by way of reasonable inference to support the allegations of the plaintiff. There was no evidence of conspiracy and this count was dismissed during trial. There was no evidence against any individual defendant School Board member, as admitted by plaintiff, and these four defendants were dismissed as parties upon judgment in their favor. The Court finds that the evidence will not support plaintiff's contention of political retribution.

## II.

It remains to consider whether the stated reasons, admitted by plaintiff and sought to be explained by her, touch upon the area of constitutionally protected exercise of free speech. Plaintiff admits stated reasons (1), (3), (4) and (5) of the Superintendent's letter to her of June 12, 1972.[1] These will be considered individually. Stated reason (1) "Belittling instructions of the principal in the presence of the teaching staff" is admitted and claimed by plaintiff as a matter of right. In these adverse comments, only vaguely related in points of time, it is clear that plaintiff stated on numerous occasions in the teachers' lounge at Rowan County High School in the presence of other teachers that the principal, Mr. Bueford Risner, was unfit to be a principal. The manner in which Mr. Risner handled a school policy of locking the student parking lot was criticized because he advised students that if they did not want their automobiles locked up they should remove them. The manner in which Mr. Risner used the school intercom system was offensive to plaintiff and the subject of her criticism. Plaintiff admits stated reason (3) "Requesting at a staff meeting that you be given the right to criticise [sic] the principal over the intercom system to all classrooms". Her explanation is that during a heated staff meeting she jokingly asked for equal time on the intercom. Mr. Risner testified that no one was in a joking mood at the time and that he did not take it as a joke. It is improbable that this incident, standing alone, has any probative value but it does create a minor circumstance to be considered in terms of all of the evidence.

I. DAVIS KIDD
CLYDE WHITE
DR. WARREN PROUDFOOT

DELBERT KEGLEY
Chairman
FORREST MAY
Vice-Chairman

ROWAN COUNTY BOARD OF EDUCATION
Clifford R. Cassady, Superintendent
118 University Boulevard
Morehead, Kentucky 40351
June 12, 1972

Mrs. Grace Amburgey
Alfrey Heights
Morehead, Kentucky 40351

Dear Mrs. Amburgey:

Pursuant to your request of May 22, 1972, for specific reasons for my recommendation not to reemploy you for the 1972–1973 school year, reference is made to my previous letter to you dated May 4, 1972, wherein stated reasons were given and which are now readopted and in addition thereto for the following reasons:

1. Belittling instructions of the principal in the presence of the teaching staff.
2. Advising faculty members that principal had failed to give instructions on attendance of pep rally, which was false and erroneous.
3. Requesting at a staff meeting that you be given the right to criticise the principal over the intercom system to all classrooms.
4. Entering classroom of another teacher and creating embarrassment to the teacher before her students.
5. Questioning authority of the principal to remove aide from classroom and library, and behavior in an insubordinate manner to principal.
6. Making threat of physical harm to administration official before other school personnel.

Very truly yours,

Clifford R. Cassady, Superintendent
Rowan County Board of Education

The admission that she entered the classroom of another teacher as set forth in stated reason (4) "creating embarrassment to the teacher before her students" is explained by plaintiff in terms of her conclusion that it was inappropriate for Mrs. Higgins, the other teacher involved, to send a student to the library three times about using and reserving a video tape machine so she went over to the classroom and told Mrs. Higgins that if she thought she could do a better job running the library than Mrs. Amburgey could, she was welcome to try. Mrs. Higgins testified that the incident adversely affected her and her class. This incident as reported in the evidence does have sufficient supporting testimony to warrant the finding that it was embarrassing to the teacher and did have an adverse effect upon Mrs. Higgins before her students. The last admitted stated reason, number (5) "Questioning authority of the principal to remove aide from classroom and library, and behavior in an insubordinate manner to principal" is explained by plaintiff as a matter of right. The circumstances of this incident involve the use of Title I funds by the Board to employ an aide to the remedial reading teacher. At times, this aide was not needed or desired present in the classroom and on these occasions was sent to the library to work. The principal, Mr. Risner, found it convenient upon the illness of his secretary at one time to bring the aide to his office to work. After the secretary returned, the aide remained in the office for a few more days. Mrs. Amburgey began inquiring as to why the aide was not returned to the library. Mrs. Amburgey states she was never given a reason. Mr. Risner testified that he told her why he had removed the aide from the library and Mrs. Amburgey would not accept his reasons. Thereafter, the Superintendent was advised by the State Board of Education that the Rowan County High School library did not qualify for Title I funds and to remove the aide from the library. Mrs. Amburgey was dissatisfied and advised Mr. Risner that she was a close personal friend of Congressman Carl Perkins and would go over Mr. Risner's head. She did seek explanation from Mr. Cassady and wrote to the State Department of Education, but denies that a Mr. Chapman from the State Board of Education and Mr. Risner ever explained the situation to her.

Plaintiff denies that she shoved the Superintendent after a Board meeting, and it is not at all clear when the event occurred, but upon all the evidence, the Court finds on a preponderance of the evidence that the shoving did occur. Again, in and of itself, this incident stands only as a circumstance to be considered in the overall situation. The evidence establishes that plaintiff, in the presence of other teachers and, on other occasions, to the custodial staff, made the following type remarks on numerous occasions. Both the Principal and Superintendent were unfit for their positions. The uncontroverted testimony of Mr. Merville Skaggs, a custodian, is that Mrs. Amburgey said of Mr. Cassady "that the old son-of-a-bitch wasn't fittin' to be a superintendent". A custodian, Sue Harr, testified that after a Board meeting in June and while she was sweeping the hallway, the plaintiff told her that "she would lay a .38 between his (Cassady's) eyes". Mrs. Amburgey denied making this statement. The witness Harr is a relative of Mr. Cassady and testified she reported the incident to him the next day. Upon all the evidence and the demeanor of the witnesses, the Court believes the statement was true. It is the uncontradicted testimony of several of plaintiff's own witnesses, upon cross-examination, that with respect to Mr. Risner and Mr. Cassady, plaintiff often said that "someone ought to kill him"; "something out to be done to Mr. Cassady"; and, that "Mr. Risner and Mr. Cassady ought to be shot". These witnesses, Patty Hardin, Karen Slone and Neva White, testified reluctantly on cross-examination about these matters. This evidence has a high credibility factor. Mrs. Amburgey, thereaf-

ter, returned to the stand after having first testified she made no threatening statements and admitted that she made such remarks and explained that she had a habit of saying that someone ought to be shot or killed when she disagreed with them, but by making such statements, she intended no suggestion of harm.

■ Although impaired by lack of specific dates, times and places and a paucity of details, the evidence, considered as a whole, supports, and this Court finds, the plaintiff was excessively critical and derisive of duly constituted school authorities and denounced them personally in abusive language to other teachers and school staff personnel.

■ Plaintiff's appeal to First Amendment protection from the alleged impermissible conduct of the defendant School Board and Superintendent must be understood in two aspects. First, a United States District Court is not a plenary reviewing body for any school board's actions—the function of this Court is not to displace the Board's judgment with its own—and, second, an appeal to the First Amendment requires the Court to determine on the evidence whether the stated reasons for non-reemployment are interposed as pretexts beclouding other and constitutionally offensive reasons for the action of the Superintendent and the Board. Whitsel v. Southeast Local School Board, 484 F.2d 1222 (6th Cir. 1973). An untenured teacher, providing compliance has been made with local law which is not in dispute here, is not entitled constitutionally to notice or hearing and may be terminated for reasons with which the Court might not agree. The examination of the basis for non-reemployment seeks to determine if it invades a constitutionally protected interest. Hetrick v. Martin, 480 F.2d 705 (6th Cir. 1973).

■ Plaintiff has admitted certain conduct and failed to traverse other testimony about her speech. Focussing on this body of evidence, it appears that it must be tested in terms of the right to comment protected under the First Amendment with the legitimate interest of the Board of Education in regulating any speech or conduct that materially interferes with the operation of the school in terms of its duty to discharge its obligation to the public. See Pickering v. Board of Education, 391 U.S. 563, 88 S. Ct. 1731, 20 L.Ed.2d 811 (1968) and Tinker v. Des Moines Independent School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969). The public has a legitimate interest in the internal operation of its schools and but for teachers' comments it would be almost impossible to identify some problems of significant magnitude. A teacher, therefore, has a right to criticize internal school operations within the ambit of free speech. The issue is whether such right may be abused and thereby remove such utterances from the protection of the First Amendment. Under the teaching of Chaplinsky v. New Hampshire, 315 U.S. 568, 571–572, 62 S. Ct. 766, 769, 86 L.Ed. 1031 (1942):

> "There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem. These include lewd and obscene, the profane, the libelous, and the insulting or 'fighting' words—those which by their very utterance inflict injury or tend to incite to an immediate breach of the peace."

It is the view of this Court a distinction exists between the obligation of society to take the risks inherent in statements of personal views on issues, as proscribed in Tinker v. Des Moines Independent School District, *supra* at 508 of 393 U.S., 89 S.Ct. 733, and insulting and profane personal statements about individuals not touching upon factual issues of public or private concern. The First Amendment has never been a shield for intemperate personal vilification of another.

■ The interests involved here are greater than those of the plaintiff and the defendants. The public is equally involved and its right to an efficiently run school for the benefit of the

students is the ultimate stake. As noted in Ferrell v. Dallas Independent School District, 392 F.2d 697, 703 (5th Cir. 1968), "[t]hat which so interferes or hinders the state in providing the best education possible for its people, must be eliminated or circumscribed as needed". Plaintiff argues that even if true, the reasons stated for her non-reemployment are trivial and do not afford an adequate basis in law. This Court disagrees. In the exercise of the discretion as to who will be employed to help in the discharge of the educational function in a public high school, the Superintendent and Board would be remiss in their duties if they did not consider the complaints of a principal about the disruption caused by a non-tenured teacher and weigh the repeated use of intemperate language and conduct. These are most important concerns and do directly and significantly affect the smooth and efficient operation of a school system. It is true that this Court cannot know what crossed the mind of plaintiff when she embarrassed Mrs. Higgins or belittled the instructions of Mr. Risner in front of other teachers or shoved the Superintendent of Schools after a School Board meeting or denominated Mr. Risner and Mr. Cassady as unfit or suggested that they should be shot or killed, or offered to lay a .38 between Mr. Cassady's eyes, or called Mr. Cassady a son-of-a-bitch. But it is equally true that a disinterested observer cannot dismiss these circumstances as trivial. They constitute a body of facts, more potent in the aggregate than individually, upon which the Board and the Superintendent acted. They are neither arbitrary nor capricious. Nor are they protected under the First Amendment.

Plaintiff's contentions of Fourteenth Amendment concern have been tacitly withdrawn. There is no viable claim of loss of property, Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), or of deprivation of a "liberty" within the ambit of procedural due process protected by the Fourteenth Amendment. Board of Regents of State Colleges v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); Orr v. Trinter, 444 F.2d 128 (6th Cir. 1971).

Judgment for the defendants will be entered forthwith.