**Coleman GORHAM**

v.

**Raymond JEWETT et al.**

**Civ. A. No. 72–2440–C.**

United States District Court,
D. Massachusetts.

April 14, 1975.

Sheldon H. Ganz, Boston, Mass., for plaintiff.

C. Peter R. Gossels, Boston, Mass., for defendants.

## OPINION

CAFFREY, Chief Judge.

This is a civil action in which plaintiff, a former guidance counselor at Wayland High School, seeks damages and injunctive relief by way of reinstatement to his former position against defendants who include the individuals who comprised the Wayland School Committee, the Superintendent of Schools, the High School Principal and the Chairman of the Board of Selectmen. Jurisdiction of this Court is invoked under 28 U.S.C.A. § 1343, for a cause of action alleged to have arisen under 42 U.S.

C.A. § 1983. Plaintiff alleges that the defendants while acting under color of state law deprived him of rights and privileges secured by the Constitution of the United States, particularly the First and Fourteenth Amendments thereto, by removing him from his former position in retaliation for his exercise of First Amendment rights. After a non-jury trial, at which ten witnesses including plaintiff and three of the defendants testified, I find and rule as follows.

The crux of plaintiff's thirty-one page complaint is the claim that the decision of the defendants Goff, as principal of Wayland High School and Zimmerman, as Superintendent of Schools, not to recommend him to the School Committee for reappointment, and the decision of the School Committee members to deny him reappointment, were based on constitutionally impermissible grounds: resentment on the part of those individuals of his public criticism of the administration and programs of the Wayland School System, which was within the protection of the First Amendment.

I find that plaintiff began his employment as a guidance counselor at Wayland High School at the beginning of the school year 1969–1970; that on April 13, 1970 the School Committee elected him as guidance counselor for the ensuing year 1970–1971; that on May 26, 1970 the Committee elected Goff principal of Wayland High School for the same year and that Goff began his duties after July 1, 1970.

Meetings were held between Dr. Goff and his assistant principals, Mauger and Connolly in January and February 1971, to discuss which members of the high school staff should be recommended by Dr. Goff for reappointment as staff members for the school year 1971–1972. Goff, in the course of these meetings, was desirous of obtaining the opinions of the assistant principals as to whether or not he should recommend non-tenured persons for reappointment.

I find that during the course of these meetings both Mauger and Connolly recommended to Dr. Goff that plaintiff not be recommended for renewal on the grounds that he did not keep his paperwork up to date and that he failed to initiate exchanges of information with them with respect to problems and matters relative to individual students. Dr. Goff tentatively decided on the basis of these recommendations not to recommend plaintiff for reemployment as guidance counselor for the 1971–1972 school year. However, this tentative decision was set aside by Dr. Goff on the strength of a recommendation by Mr. Oxford, the head of the High School Guidance Department, who had favorably evaluated plaintiff's performance as guidance counselor.

Although he had serious reservations about the desirability of reappointing plaintiff, Dr. Goff decided to give him the benefit of the doubt and recommended his reappointment for a third year. In March 1971, Mr. Oxford, on the basis of his discussions with Dr. Goff, met with plaintiff and advised him that his reappointment was "tenuous" and that "we needed to improve communications, we needed to do everything we could to ameliorate the situation."

As part of his duties, Dr. Goff prepared a proposal for Title III funds under the Elementary and Secondary Education Act, and he submitted it on behalf of the Town of Wayland and the neighboring Town of Weston. On March 5, 1971, plaintiff wrote a letter to Dr. Goff criticizing this proposal. Plaintiff also wrote letters critical of the proposal to then-Superintendent of Schools Gainey and to Jack Bohlen, Chairman of the Wayland School Committee. None of these addressees responded to plaintiff's letter and, after the expiration of some weeks, he gave a copy of the letter to the Editor of the Wayland Town Crier, a local weekly newspaper, which published the letter on May 20, 1971.

Approximately two days prior to the publication of the article, the Editor advised Dr. Goff of the upcoming publication and gave him an opportunity to respond to plaintiff's letter in the same is-

sue of the paper. Dr. Goff was angered by the publication of the letter because, in his opinion, it endangered the Title III program and carried with it the risk that those persons who would be the recipients of help from the program might lose that help if sufficient publicity were generated to cancel the program.

I do not credit plaintiff's testimony that Dr. Goff advised him that he intended to revise his evaluation of plaintiff's work because the letter was given to the newspaper. Three evaluations of plaintiff's performance of his duties during the 1970–1971 school year were made. The first, dated June 9, 1971, was withdrawn as a result of a Level One grievance brought by the Grievance Committee of the Teachers Association. Two other evaluations were prepared by Dr. Goff and signed by plaintiff on June 22 and 23 respectively. These were prepared to replace the June 9 evaluation because of plaintiff's contention that he was entitled to receive two evaluations per school year. No grievance was prosecuted by the Association as to the June 22 or 23 evaluation.

Plaintiff wrote to Bohlen, Chairman of the School Committee, on July 5, 1971, requesting that the June 22 and 23 evaluations and a letter of reprimand allegedly prepared by Superintendent Gainey be removed from his personnel folder. Bohlen responded by suggesting that plaintiff direct his problems to the attention of the incoming Superintendent, Dr. William G. Zimmerman. Thereafter, Dr. Zimmerman met with plaintiff and then with Dr. Goff to discuss the situation and it was agreed by all concerned that the June 22 and 23 evaluations would be removed from plaintiff's folder, and replaced with one composite evaluation which would not refer to the Title III matter. Dr. Goff requested the assistant superintendent to remove those evaluations from plaintiff's folder.

Difficulties then arose relative to the preparation of the substitute evaluation. Plaintiff requested the Superintendent to have his evaluation prepared by someone other than Dr. Goff. This request was refused by Dr. Zimmerman on the ground that, as principal of the high school, Dr. Goff had the responsibility for evaluating the staff thereof. When proffered Dr. Goff's substitute evaluation, plaintiff refused to sign it, for a reason which is not clear on the evidence in this case. In so refusing, I find that plaintiff violated the contract then in existence between the Wayland School Committee and the Wayland Teachers Association, which provided in pertinent part:

> "Teachers will sign . . . any evaluation report . . . . The teacher will acknowledge that he has had the opportunity to review [derogatory] material by affixing his signature to the copy to be filed with the express understanding that such a signature in no way indicates agreement with the contents thereof."

I find that Dr. Goff's substitute evaluation was a fair evaluation of plaintiff, including, as it did, the favorable recommendation of plaintiff by Mr. Oxford and containing critical comments by the assistant principals which antedated the Title III incident.

I find that plaintiff had no reasonable grounds for expecting a complimentary evaluation of his 1970–71 services as guidance counselor when he had been informed prior to publication of the Title III letter that his performance was unsatisfactory and that unless there was improvement during the following (third) year, he would not be recommended for tenure. I find that his refusal to sign this reasonable evaluation is totally inexplicable in view of the fact that he had previously signed three evaluations which were more critical of him and to which he strenuously objected.

I further find that this controversy was acerbated by plaintiff's unreasonable insistence that Dr. Goff reduce to writing and make available for publication a statement that the June 22 and 23 evaluations were removed because they were unjust and vindictive. I find that Dr. Goff was acting legally and reasonably in refusing to do so.

On December 20, 1971, Dr. Goff made an evaluation of plaintiff's work, which covered the first portion of the 1971–72 school year. This evaluation mentioned Mr. Oxford's favorable views, indicated that there had been some improvement in the areas previously criticized by the assistant principals, but that there was still room for more improvement. Plaintiff also refused to sign this evaluation.

In February 1972, following consultation with the assistant principals and Mr. Oxford, Dr. Goff advised Dr. Zimmerman that he did not recommend plaintiff for reappointment, and on March 16, 1972 Dr. Zimmerman advised plaintiff that he would not be recommended for the following school year. Responding to a request by plaintiff for the basis of his decision not to recommend him for continued employment, Dr. Zimmerman notified plaintiff that the grounds were: failure to initiate exchanges of information with the administration, poor paper work, and a non-cooperative attitude.

Dr. Zimmerman's action was adopted by the School Committee on April 10, 1972, when it voted not to tender a contract to plaintiff for the 1972–73 academic year. Plaintiff thereupon initiated a grievance because of his non-renewal, which was carried through Level One, Level Two and Level Three. At the Level Three stage of the proceedings, the Committee met with plaintiff and the Grievance Committee of the Association, and after a lengthy hearing denied the grievance. There is no contention in this case that any of the Levels of the grievance procedure were conducted other than in accordance with the agreement between the Teachers Association and the Committee.

Thereafter, on June 30, 1973, plaintiff's contract with the Town of Wayland expired by its own terms.

■ The Supreme Court has ruled that if a contract of public employment is withheld in retaliation for or to penalize the exercise of the right to free expression, that conduct constitutes a valid ground for the granting of relief by a federal court. Perry v. Sinderman, 408 U.S. 593, 596, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). The Court has also held that a statement by a public employee as to a matter of public concern, even though critical of or directed against his superiors, is entitled to First Amendment protection. Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). It should be noted, however, that in reviewing the discharge of a public school system employee a United States District Court is not a super school committee, nor is it a plenary reviewing body to evaluate a school board's personnel judgments and replace them with its own. Amburgey v. Cassady, 370 F.Supp. 571 (E.D.Ky. 1974). The proper scope of this court's investigation into the non-reemployment of a public school employee is a determination whether or not it invades or trammels a constitutionally protected right of the employee. The burden of proving that his employment was terminated because he exercised a constitutional right is on the non-tenured employee who asserts that his non-rehiring occurred for constitutionally impermissible reasons. Smith v. Losee, 485 F.2d 334 (10 Cir. 1973), cert. den. 417 U.S. 908, 94 S.Ct. 2604, 41 L.Ed.2d 212.

■ I find that the letter which plaintiff gave to the Editor of the local weekly newspaper concerned a matter of public interest and was within the area of speech protected by the First Amendment. I further rule that plaintiff's termination could not constitutionally be predicated on the fact that he made the letter available to the Editor of the local paper. However, I find that plaintiff has failed to establish that his non-renewal as a guidance counselor in the Wayland public school system was bottomed on his exercise of his constitutional rights. On the contrary, I am persuaded by the substantial amount of clear and convincing evidence adduced at the trial that defendants have established that plaintiff's severance from the

Wayland school system was based on proper and legitimate considerations going to the caliber of his performance of his duties as a guidance counselor in that system.

I specifically find as to each defendant as to whom evidence was offered that he was acting in an honest manner in exercising the judgment that on the merits plaintiff's performance did not warrant his continuance as a guidance counselor. In so finding I specifically have in mind that both assistant principals consistently recommended against his reappointment long before the Title III letter ever came into being. I find that Dr. Goff and Dr. Zimmerman were acting reasonably and objectively in relying on the recommendations of the assistant principals, and I note that even Mr. Oxford, the head of the guidance department, whose earlier recommendations had been favorable to plaintiff, conceded in his testimony that he was not surprised at the ultimate decision to withhold from plaintiff an offer of a fourth year's contract, and that Mr. Oxford concluded his testimony with the telling observation, "I think I was more understanding of that at that time than I was the year previous," and, to a final question, "did you remonstrate in any way or argue," Mr. Oxford answered "No, sir."

I further find that the members of the School Committee made their decision in reliance on Dr. Zimmerman's recommendation and not because of the exercise of First Amendment rights by plaintiff. Lastly, I rule that the stated reasons for plaintiff's non-reemployment were not interposed as pretexts to conceal constitutionally offensive reasons. Whitsel v. Southeast Local School District, 484 F.2d 1222 (6 Cir. 1973). Accordingly, I conclude that plaintiff has failed to establish that the decision not to continue him as a member of the guidance department of the Wayland High School was based on any unconstitutional, illegal, or improper ground.

Judgment for the defendants.