Marvin A. SMITH,

v.

SCHOOL DISTRICT OF PHILADEL-PHIA; School District of Philadelphia, Superintendent David Hornbeck; Philadelphia Board of Education; Philadelphia Board of Education, President Floyd Alston; Philadelphia Federation of Teachers Local # 3 Building, Representative Avi Barr; and Assistant Principal of Carver High School of Engineering and Science Steven Miller.

No. C.A.98–6456.

United States District Court, E.D. Pennsylvania.

Sept. 6, 2000.

418

*MEMORANDUM*

DuBOIS, District Judge.

## I. FACTS

Marvin A. Smith ("plaintiff") is the father of two children who in the fall of 1997 were enrolled at George Washington Carver High School of Engineering and Science ("Carver"), a "magnet" public high school located at 17th and Norris Streets in North Philadelphia. *See* Complaint at ¶¶ 24, 36. Plaintiff was concerned that racism at Carver was affecting his children and other African American students at the school. As a result, on January 1, 1998, he wrote a letter to Carver's Principal, Ella Travis, calling for certain changes to be made at Carver.[1] *See* Complaint at ¶¶ 37–38; Appendix, Exhibit A.

The focus of plaintiff's letter was his view that "the white/Jewish teachers" at Carver were racist and discriminated against African–American students, who constituted the majority of pupils at the school. The following excerpt is provided as representative of the letter's content:

Dear Mrs. Travis:

\* \* \* \* \* \*

The white/Jewish teachers at [Carver] are generally guilty of the following offenses:

(1) Failing to motivate our African–American children to be the best they can be. Too many white/Jewish teachers have low expectations of our children. Racial Discrimination! Racism!

(2) Failing miserably to provide the kind of high quality, interesting and stimulating learning experiences

---

1. Although plaintiff's letter of January 1, 1998 and several petitions that were circulated by plaintiff are integral to the Complaint, copies were not attached to the pleadings. Nevertheless, the Court will consider in their entirety the letter and one of the petitions, both of which were appended to the motion papers.

*See In re Rockefeller Center Properties, Inc. Sec. Litig.,* 184 F.3d 280, 287 (3d Cir.1999) (citing *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410 (3d Cir.1997)). Copies of the letter and the petition are attached to this Memorandum in an Appendix, as Exhibits A and B, respectively.

which would assist students in being successful. Racism!

(3) Failing miserably to and honor the cultural and ethnic value of African–American History Month by assigning the majority African–American student body the task of reporting on the movie Shindler's List, instead of an African–American assignment. That was blatant disrespect and insensitivity! Racism!

(4) Failing miserably to recognize the majority African–American student body by allowing a teacher to tell African–American students that affirmative action should be eliminated! This is another blatant example of white/Jewish teachers misleading our children. Racism!

(5) Failing miserable to regularly and effectively inform the students of the many false representations of this racist country, and the many, many violations of its own [C]onstitution. Acute racial discrimination, rampant violations of its citizens' human rights are also issues neglected in the curricula and the classroom. Why aren't African–American students taught to protest, boycott, and demonstrate against these American atrocities?

\* \* \* \* \* \*

We want these uncaring racist white/Jewish people to take their flawed and ineffective show back to the suburbs where they live! They are systematically destroying our children's spirit and killing their will. This racist system must be stopped by whatever means necessary and possible before additional generations of our children are lost.

\* \* \* \* \* \*

Since these white/Jewish people have been our traditional enemy, why are they so eager to accept the "teaching positions" at schools where African–Americans are predominantly enrolled? They are not there because they love or care about our children! They are there because oppressors need to oppress! We must stop the oppressors and the oppression!

\* \* \* \* \* \*

We—African–Americans—must control the educational institutions that are ours! If we fail to effectively control OUR INSTITUTIONS OF LEARNING we are surely doomed to continue our lives depending on white/Jewish people and following their directions. We must be the master of our fate and absolutely must be the captain of our soul!

I am amenable to meeting with you, at your earliest convenience, to discuss the contents [of] this letter,

MARVIN A. SMITH (signed)

In June, 1998, nearly six months after plaintiff wrote the letter, plaintiff was elected by a vote of parents of Carver students as president of Carver's Home and School Association. *See* Complaint at ¶ 40. At or about the same time, plaintiff was appointed to serve on the Advisory Panel at Carver; plaintiff does not specify in the Complaint his role on the Advisory Panel, when he was appointed to that position, or who made the appointment. *See* Complaint at ¶ 44.

Soon after plaintiff assumed these roles, he began advocating for the removal of certain Carver staff members. Plaintiff circulated petitions calling for the termination of selected administrators and teachers at the school, including defendant Steven Miller, Carver's Assistant Principal, and defendant Avi Barr, a teacher at Carver and the building representative for the Philadelphia Federation of Teachers Local # 3. *See* Complaint at ¶ 41. One such petition, dated December 1, 1998, was written in the form of a letter. *See supra* note 1; Appendix, Exhibit B. Following is an excerpt from that document:

Dear Mrs. Travis:

We, the parents, Guardians and Friends of students enrolled at [Carver] hereby

demand the termination, resignation or transfer of Steven Miller from his position as the assistant principal at Carver. He is a major divisive and negative force at Carver.

\* \* \* \* \* \*

We, the Parents, Guardians and Friends of students of Carver have regularly observed Steven Miller's acute inhospitality. He walks through Carver—where Our Precious Children are enrolled—and acts like Parents, Guardians and Friends of Carver are invisible. He simply ignores us! That is completely and absolutely unacceptable! Steven Miller is extremely uncomfortable around Parents, Guardians and Friends of Carver. He is hostile, mean spirited, and downright disrespectful of Parents, Guardians and Friends of students enrolled at Carver.

\* \* \* \* \* \*

We, the Parents, Guardians and Friends of students enrolled at Carver also very strongly demand the termination, resignation or transfer of ... Avi Barr.... We, the Parents, Guardians and Friends of students enrolled at Carver demand that Steven Miller, the Carver [A]ssistant [P]rincipal, be terminated, transferred or asked to resign ...

In or about December, 1998 the Philadelphia Board of Education, chaired by President Floyd Alston, unanimously passed a resolution condemning plaintiff and calling upon Carver's Home and School Association to remove him from his post as its president.[2] The Board's resolution, reproduced in its entirety, was as follows:

The Philadelphia Board of Education and Superintendent deplore and condemn the actions of Mr. Marvin Smith,

President of the Home and School Association at George Washington Carver High School. Mr. Smith has chosen to express his concerns about Carver High School through a most inflammatory letter to the principal. This letter contained not only prejudicial statements but, was clearly racist and anti-Semitic. In both spirit and word it offends us personally, the entire School District community and all those we serve. In light of these facts, the Board calls upon the Home and School Council to act swiftly and appropriately by removing Mr. Smith as President of the Carver Home and School Association. Furthermore, the Board and the Superintendent are resolved that Mr. Smith shall have no official standing in the School District of Philadelphia from this point forward.

At or about the time this resolution was passed, plaintiff was removed from his position on Carver's Advisory Panel. *See* Complaint at ¶ 44. In addition, on December 9, 1998, Carver's Home and School Association sent a letter to Carver's parents informing them that they had removed plaintiff as its president. *See* Complaint at ¶ 46.

## II. PROCEDURAL HISTORY

On December 11, 1998 plaintiff filed a Complaint (Doc. 1) demanding compensatory damages, punitive damages, attorney's fees and costs in excess of $10 million. The Complaint asserts seven causes of action. The School District of Philadelphia, School District Superintendent David Hornbeck ("Hornbeck"), the Philadelphia Board of Education, Board President Floyd Alston ("Alston"), Avi Barr ("Barr"), and Steven Miller ("Miller") (collectively the "School District defendants") are named in all seven counts.[3] Plaintiff sues

---

2. Although plaintiff explicitly relies upon the resolution in the Complaint, the text was not included in the pleadings. Nevertheless, the Court will consider the text of the resolution, which was set forth in the motion papers. *See In re Rockefeller Center*, 184 F.3d at 287.

3. Plaintiff originally filed his lawsuit against fourteen defendants. By agreement of the parties, the following originally named defendants were dismissed by this Court's Order dated May 10, 1999 (Doc. 25): National Association for the Advancement of Colored Peo-

all non-institutional defendants in their individual and official capacities. *See* Complaint, at ¶¶ 1; 47–53.

On February 4, 1999 the School District defendants filed an Answer to plaintiff's Complaint (Doc. 11). The Answer contained several affirmative defenses, including the defense of failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). Also on February 4, 1999, the School District defendants filed a joint motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). The School District defendants argue in their motion that plaintiff has failed to state a claim upon which relief can be granted. Plaintiff filed a response to the School District defendants' joint motion. It is this motion that is presently before the Court.

### III. STANDARD OF REVIEW

■ The standard of review in a motion for judgment on the pleadings filed pursuant to Federal Rule of Civil Procedure 12(c) is identical to that for a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).[4] *See Byrd v. Robison, et al.,* 1997 WL 14495, at *3 n. 1 (Jan. 14, 1997 E.D.Pa.) (citing *Turbe v. Government of the Virgin Islands,* 938 F.2d 427, 428 (3d Cir.1991).

In considering such motions, the court must accept as true all well-pleaded material facts alleged by the non-moving party as well as all reasonable inferences that may be derived from those facts. *See Jenkins v. McKeithen,* 395 U.S. 411, 421, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969) (applying standard in connection with Fed. R.Civ.P. 12(b)(6)); *Bryson v. Brand Insu-*

*lations, Inc.,* 621 F.2d 556, 559 (3d Cir. 1980) (applying standard in connection with Fed.R.Civ.P. 12(c)). If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to the Court and not excluded, the motion is treated as a motion for summary judgment under Federal Rule of Civil Procedure 56, and all parties are given an opportunity to present relevant evidence. *See ALA v. CCAIR, Inc.,* 29 F.3d 855, 859 (3d Cir. 1994); Fed.R.Civ.P. 12(c). A complaint should be dismissed if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

■ Plaintiff is proceeding *pro se* in this case. The Court is mindful of the instruction that it should broadly construe normal pleading requirements when handling *pro se* submissions. *See Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (holding *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers").

### IV. DISCUSSION

Plaintiff contends that defendants Barr and Miller "leaked" his January 1, 1998 letter addressed to Principal Travis. *See* Complaint at ¶ 42. Thereafter, according to plaintiff, defendants Barr and Miller and others "began to pressure" defendants School District of Philadelphia and School District Superintendent David Hornbeck to "terminate[ ] plaintiff's appointment on [Carver's] Advisory Panel," and plaintiff was so terminated. *See* Complaint at ¶¶ 43, 44. Also according to plaintiff, defendants Philadelphia Board of Education

---

ple ("NAACP"); Jerry Mondesire, President of NAACP; Philadelphia Federation of Teachers Local # 3 ("PFT"); Jerry Jordan, PFT Vice President; Jewish Community Relations Council ("JCRC"); Burt Siegal, Executive Director of JCRC; Anti–Defamation League of B'Nai B'rith ("ADL"); Barry Morrison, Regional Director of ADL.

4. Fed.R.Civ.P. 12(h)(2) provides that the Fed. R.Civ.P. 12(b)(6) defense of failure to state a claim upon which relief may be granted can be raised after an answer has been filed by motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c).

and Board President Floyd Alston reacted to pressure and engaged in their own conspiracy to remove plaintiff from his post as president of Carver's Home and School Association, and plaintiff was so removed. *See* Complaint at ¶ 45.

Plaintiff alleges seven causes of action, summarized as follows: Count 1—an unlawful conspiracy pursuant to § 1985 of the Civil Rights Act of 1871; Count 2—intentional infliction of emotional distress under Pennsylvania law; Count 3—negligent infliction of emotional distress under Pennsylvania law; Count 4—defamation of character under Pennsylvania law; Count 5—deprivation of constitutional rights guaranteed by the First and Fourteenth Amendments of the United States Constitution; Count 6—violations of § 1983 of the Civil Rights Act of 1871; and Count 7—invasion of privacy under Pennsylvania law.

### A. *Counts 2, 3, 4 & 7—Municipal Liability for State Law Claims*

■ Plaintiff alleges several state law claims in Counts 2 (intentional infliction of emotional distress), 3 (negligent infliction of emotional distress), 4 (defamation of character) & 7 (invasion of privacy) against two municipal entities—the School District of Philadelphia and the Philadelphia Board of Education. These claims for intentional torts against municipal entities are barred by Pennsylvania law. Plaintiff asserts the same state law claims against defendants Hornbeck, Alston, Barr and Miller in their official capacities as municipal employees.

All such claims are treated as claims against municipal entities and are barred under Pennsylvania law.

The Political Subdivision Tort Claims Act (the "Tort Claims Act") grants to municipal agencies immunity from liability for all state law tort claims. *See* 42 Pa.C.S.A. § 8541 et. seq. (Purdon's 1998 and Supp. 2000); *Martin v. City of Philadelphia, et al.*, No. 99–543, 2000 WL 1052150 (E.D.Pa. July 24, 2000); *Wakshul v. City of Philadelphia*, 998 F.Supp. 585 (E.D.Pa.1998). The Tort Claims Act provides that "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 Pa.C.S.A. § 8541. While the Tort Claims Act provides eight exceptions to this grant of immunity, *see* 42 Pa.C.S.A. § 8542, none are applicable to this case.[5]

The School District of Philadelphia and the Philadelphia Board of Education are local agencies within the meaning of the Tort Claims Act. *See Kessler v. Monsour et. al.*, 865 F.Supp. 234, 241 (M.D.Pa.1994) (School District is municipal entity); *Carlino v. Gloucester City High School, et. al.*, 57 F.Supp.2d 1, 33 (D.N.J.1999) (Board of Education is municipal entity). Accordingly, they are immune from liability for the intentional torts alleged in Counts 2, 3, 4 & 7 of the Complaint.

■ In a suit against a government official in his official capacity, "the real party in interest ... is the governmental entity and not the named official...." *Hafer v.*

---

5. In connection with the intentional torts alleged by plaintiff in Counts 2, 4 and 7 against defendants Barr and Miller in their individual capacities, the Court notes that plaintiff failed to plead willful misconduct with respect to such defendants. Absent such allegations, defendants are entitled to the same immunity as their employer—the School District of Philadelphia. *See* 42 Pa.C.S.A. §§ 8545, 8550 (Purdon's 2000).

Notwithstanding this immunity, the Court analyzed plaintiff's claims for intentional infliction of emotional distress, defamation of character and invasion of privacy against de-

fendants Barr and Miller on the merits and determined that they must be dismissed on grounds unrelated to the issue of willful misconduct. *See infra*, Sections IV.D (Count 2—intentional infliction of emotional distress), IV.F (Count 4—defamation of character), and IV.I (Count 7—invasion of privacy) of this Memorandum. In light of that analysis, the Court concludes that it need not grant plaintiff leave to amend the Complaint so as to allege willful misconduct on their part because such an amendment would be futile. *See Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

*Melo,* 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). Accordingly, to the extent that in Counts 2, 3, 4 & 7 plaintiff assert state law claims against defendants Hornbeck, Alston, Barr and Miller in their official capacities, they are treated as claims against the municipal entities that employ these individuals—that is, the School District of Philadelphia and the Philadelphia Board of Education. Because plaintiff's state law claims against the School District of Philadelphia and the Philadelphia Board of Education are barred as a matter of law, the claims against defendants Hornbeck, Alston, Barr and Miller in their official capacities are also barred.

**B.** *Counts 2, 4 & 7—Intentional Tort Claims v. Defendants Hornbeck and Alston in their Individual Capacities*

In Counts 2 (intentional infliction of emotional distress), 4 (defamation of character) & 7 (invasion of privacy) plaintiff asserts claims for intentional torts against defendants Hornbeck and Alston in their individual capacities. As with plaintiffs state law claims against the School District of Philadelphia, the Philadelphia School Board and defendants Hornbeck, Alston, Barr and Miller in their official capacities, these claims must be dismissed as a matter of law.

The Tort Claims Act provides in pertinent part:

In any action brought against an employee of a local agency for damages on account of an injury to a person or property based upon claims arising from, or reasonably related to, the office or the performance of the duties of the employee, the employee may assert on his own behalf, or the local agency may assert on his behalf: (1) defenses which

are available at common law to the employee ...

42 Pa.C.S.A. § 8546.

■ Pennsylvania common law recognizes the doctrine of absolute immunity for "high public officials." *See Lindner v. Mollan,* 544 Pa. 487, 490–91, 677 A.2d 1194, 1195–96 (1996) (holding that the Tort Claims Act does not abrogate high public official's absolute immunity from civil suits arising out of false defamatory statements). Moreover, Pennsylvania courts have recognized that school superintendents, such as defendant Hornbeck, and presidents of school boards, such as defendant Alston, qualify as high public officials for purposes of this common law doctrine. *See, e.g., Petula v. Mellody,* 158 Pa. Cmwlth. 212, 631 A.2d 762 (1993); *Matta v. Burton,* 721 A.2d 1164, 1166 (Pa. Cmwlth.1998).[6]

In *Lindner,* the Supreme Court of Pennsylvania held that high public official immunity is an unlimited privilege that exempts high public officials from lawsuits for defamation, provided the statements made by the official are made in the course of his official duties and within the scope of his authority. Although ordinary local agency employees can be held liable if they have engaged in crime, actual fraud, actual malice or willful misconduct, *see* 42 Pa. C.S.A. § 8550; *Mascaro v. Youth Study Center,* 514 Pa. 351, 523 A.2d 1118 (1987), high public officials accused of defamation enjoy absolute immunity even when willful misconduct is alleged, *see Lindner,* 544 Pa. 487, 677 A.2d 1194 (1996); *Kuzel v. Krause,* 658 A.2d 856 (Pa.Cmwlth.1995).

In the instant case, plaintiff has alleged defamation as well as two other intentional torts—intentional infliction of emotional distress and invasion of privacy—against defendants Hornbeck and Alston. Those defendants argue that the common law doctrine of absolute immunity for high

**6.** Defendant Avi Barr, as a teacher at Carver, and defendant Steven Miller, as an Assistant Principal at Carver, do not qualify as high public officials for purposes of this common law immunity doctrine. Claims against defendants Miller and Barr in their individual capacities are therefore addressed separately in this Memorandum.

public officials immunizes them from individual liability for all of these intentional torts. However, the Supreme Court of Pennsylvania's holding in *Lindner* involved the tort of defamation, and that Court has yet to decide whether the immunity for high public officials extends to other intentional torts.

■ When a state's highest court has not addressed the precise question presented in a diversity action, a federal court must predict how the state's highest court would resolve the issue. *See Paolella v. Browning–Ferris, Inc.,* 158 F.3d 183, 189 (3d Cir.1998). In doing so a district court may consider the decisions of state intermediate appellate courts in order to facilitate its prediction. *See id.*

This Court predicts that the Supreme Court of Pennsylvania would hold that the Tort Claims Act does not abrogate high public official's absolute immunity from civil suits for intentional infliction of emotional distress and invasion of privacy. In making this prediction, the Court relies primarily on the *Lindner* court's explanation that the Pennsylvania common law doctrine of absolute immunity for high public officials "rests upon the idea that conduct which otherwise would be actionable is to escape liability because the defendant is acting in furtherance of some interest of social importance, which is entitled to protection even at the expense of uncompensated harm to the plaintiff's reputation." Also significant is the *Lindner* court's statement that "this sweeping immunity is not for the benefit of high public officials, but for the benefit of the public." *Lindner,* 544 Pa. at 490, 677 A.2d at 1195 (citations omitted).

Finally, one Pennsylvania Commonwealth Court relied on *Lindner* in holding that the doctrine of absolute immunity for high public officials extends to suits against municipal officials for intentional torts other than defamation, specifically tortious interference with employment relationship and intentional infliction of emotional distress. *See Holt v. Northwest Pa. Trng. Prtshp. Consrtm., Inc.,* 694 A.2d 1134, 1140 (Pa.Commw.1997).

According to plaintiff's Complaint, the actions allegedly taken by defendants Hornbeck and Alston—passing a resolution condemning plaintiff's letter to Principal Travis as racist and anti-Semitic, terminating plaintiff's appointment to the Advisory Panel for Carver, and urging the Home and School Council to remove plaintiff as president of Carver's Home and School Association, *see* Complaint at ¶¶ 44–45,—were all taken within the course of their official duties or powers and within the scope of their authority. In light of those allegations, defendants Hornbeck and Alston are entitled to invoke the doctrine of absolute immunity for high public officials pursuant to 42 Pa. C.S.A. § 8546, and plaintiff's claims against them in their individual capacities in Counts 2, 4 & 7 must be dismissed.

**C. *Count 1—Section 1985 Claims v. all School District Defendants***

■ In Count 1 of the Complaint plaintiff asserts that the School District defendants conspired to violate his rights by "attempting to force his removal from office without due process of law for exercising his rights under the First Amendment ... causing plaintiff's removal from his duly elected office," in violation of § 1985 of the Civil Rights Act of 1871.[7] *See* 42 U.S.C.A. § 1985(3) (West Supp.1999). The Court concludes that these claims must be dismissed.

Section 1985(3) creates a cause of action against any two or more persons who "conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of

---

**7.** Plaintiff cites 42 U.S.C.A. § 1985(2) in his Complaint. However, that section relates to "obstructing justice; intimidating party, witness or juror." Plaintiff was not a witness,

juror, or litigant in a proceeding in federal court; thus there is no cause of action under § 1985(2). Plaintiff obviously meant to refer to 42 U.S.C.A. § 1985(3).

the laws, or of equal privileges ·and immunities under the laws...." 42 U.S.C.A. § 1985(3) (West Supp.1999). In the context of a motion for judgment on the pleadings, to establish a claim under § 1985(3) plaintiff must allege that the School District defendants' actions were motivated by a "racial or ... otherwise class-based invidiously discriminatory animus...." *Griffin v. Breckenridge,* 403 U.S. 88, 102–03, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971); *Lake v. Arnold,* 112 F.3d 682, 685 (3d Cir.1997).

■ As the School District defendants argue, nowhere in the Complaint does plaintiff allege that defendants were motivated by class-based invidious discriminatory animus. Plaintiff claims that the School District defendants conspired against him by attempting to force his removal from office as president of Carver's Home and School Association for exercising his First amendment rights. *See* Complaint at ¶ 47. Those allegations—even if construed to include plaintiff's alleged termination from his position as a member of Carver's Advisory Panel—do not state a claim under § 1985 because that statute does not extend to a conspiracy to retaliate against individuals based upon the exercise of First Amendment rights. *See Herhold v. City of Chicago,* 723 F.Supp. 20, 33–37 (N.D.Ill.1989); *Bedford v. Southeastern Pennsylvania Transp. Authority,* 867 F.Supp. 288, 294 n. 5 (E.D.Pa.1994).

Because the Complaint does not allege that the School District defendants' actions were motivated by racial or otherwise class based invidious discriminatory animus the claims in Count 1 must be dismissed. Leave to amend will not be granted on the ground that the Complaint, taken as a whole, makes it absolutely clear that plaintiff alleges the complained-about actions of the School District defendants were taken because of the letter and petitions plaintiff authored, not racial animus or anything else covered by § 1985.

**D.** *Count 2—Claim for Intentional Infliction of Emotional Distress v. Defendants Barr and Miller in their Individual Capacities*

Although Count 2 asserts claims for intentional infliction of emotional distress against all School District defendants, the Court has already ruled, *supra* Section IV.A., that the Torts Claims Act prevents such state law claims against the School District of Philadelphia, the Philadelphia Board of Education and defendants Hornbeck, Alston, Barr and Miller in their official capacities. The Court has also ruled, *supra* Section IV.B, that plaintiff's intentional tort claims against defendants Hornbeck and Alston in their individual capacities must be dismissed pursuant to Pennsylvania's common law doctrine of absolute immunity for high public officials. Accordingly, in connection with Count 2 the Court need only consider plaintiff's claims for intentional infliction of emotional distress against defendants Miller and Barr in their individual capacities. The Court concludes that these claims must be dismissed.

■ In the context of a motion for judgment on the pleadings, under Pennsylvania law to support a claim of intentional infliction of emotional distress a plaintiff must allege conduct that: (1) is extreme and outrageous; (2) is intentional or reckless; and, (3) causes severe emotional distress.[8] *See Williams v, Guzzardi,* 875 F.2d 46 (3d Cir.1989); *Hoy v. Angelone,* 456 Pa.Super. 596, 610, 691 A.2d 476 (1997). It is for this Court to decide as an initial matter whether the conduct at issue can reasonably be regarded as sufficiently extreme to constitute "outrageousness" as a matter of law. *See Kuzel v. Krause,* 658 A.2d 856, 860

**8.** The School District defendants argue that "it is unclear whether the Pennsylvania Supreme Court would recognize a cause of action for the intentional infliction of emotional distress." In light of Third Circuit authority, *see, e.g. Guzzardi,* this Court need not address that issue.

(Pa.Commw.1995); *Corbett v. Morgenstern,* 934 F.Supp. 680, 684 (E.D.Pa.1996).

Liability for intentional infliction of emotional distress "has been found only where ... the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'outrageous.' " *Hunger v. Grand Central Sanitation,* 447 Pa.Super. 575, 584, 670 A.2d 173 (1996) (applying the Restatement (Second) of Torts § 46, Comment d (1965)). Pennsylvania courts have found intentional infliction of emotional distress only where the conduct at issue has been "atrocious" and "utterly intolerable in a civilized community." *Banyas v. Lower Bucks Hosp.,* 293 Pa.Super. 122, 437 A.2d 1236 (1981)). They have recognized that tort, for example, where hospital employees gave false reports so that a person was indicted for homicide, *see Banyas,* 437 A.2d at 1239, where the defendant sexually harassed his employee and also forbade her from speaking with others, followed her at work, and withheld necessary information from her, *Bowersox v. P.H. Glatfelter Co.,* 677 F.Supp. 307, 311 (M.D.Pa. 1988), and where the defendant's car hit a child, defendant buried him on the side of the road, and the parents discovered the body only months afterwards, *see Papieves v. Kelly,* 437 Pa. 373, 263 A.2d 118 (1970).

■ The allegations against defendants Miller and Barr fall well short of the foregoing standard for outrageousness. Plaintiff claims that these defendants "leaked the letter to the press, to the district and to certain Jewish group [sic]," and that they "began to pressure Carver's Home and School Association Leadership and the School District of Philadelphia ... to remove plaintiff from his duly elected post." Complaint at ¶¶ 42–43. Even if true, such conduct could never rise to the level of outrageousness required to sustain a claim for intentional infliction of emotional distress as a matter of law. Accordingly, the claims in Count 2 must be dismissed.

### E. Count 3—Claim for Negligent Infliction of Emotional Distress v. Defendants Hornbeck, Alston, Barr and Miller in their Individual Capacities

In Count 3 plaintiff asserts claims against all of the School District defendants for negligent infliction of emotional distress. In connection with this count, the Court need only consider plaintiff's claims against defendants Hornbeck, Alston, Barr and Miller in their individual capacities. *See supra* Section IV.A. (ruling that state law claims against the School District of Philadelphia, the Philadelphia Board of Education, and defendants Hornbeck, Alston, Barr and Miller in their official capacities are barred by the Tort Claims Act) and IV.B (ruling that state law claims against defendants Hornbeck and Alston in their individual capacities must be dismissed pursuant to Pennsylvania's common law doctrine of absolute immunity for high public officials). The Court concludes that these claims for negligent infliction of emotional distress must be dismissed.

■ In the context of a motion for judgment on the pleadings, under Pennsylvania law to establish a claim of negligent infliction of emotional distress plaintiff must allege that: (1) he was near the scene of an accident; (2) shock or distress resulted from a direct emotional impact caused by the sensory or contemporaneous observance of the accident, as opposed to learning of the accident from others after its occurrence; and (3) he is closely related to the injured victim. *Sinn v. Burd,* 486 Pa. 146, 170–71, 404 A.2d 672, 685 (1979); *Frempong–Atuahene v. Redevelopment Auth. of Phila.,* No. 98–0285, 1999 WL 167726, *7 (E.D.Pa. Mar. 25, 1999).

■ Plaintiff's Complaint fails to allege any facts that even remotely satisfy the foregoing requirements. Plaintiff does not allege in the Complaint that there was any accident or physical injury suffered by anyone as a result of the conduct of defen-

dants Barr and Miller. *See Wall v. Fisher*, 388 Pa.Super. 305, 313, 565 A.2d 498, 502 (1989) (noting that physical injury is a necessary element on a claim for negligent infliction of emotional distress). In short, plaintiff's allegations of wrongful conduct on the part of defendants Barr and Miller—leaking plaintiff's letter dated January 1, 1998, and pressuring to have plaintiff terminated as a member of Carver's Advisory Panel and removed as president of Carver's Home and School association—do not constitute negligent intentional infliction of emotional distress. Accordingly, the claims in Count 3 must be dismissed.

### F. *Count 4—Claims for Defamation of Character v. Defendants Barr and Miller in their Individual Capacities*

Count 4 asserts claims for defamation of character against all School District defendants. In connection with this count, the Court need only consider plaintiff's claims against defendants Barr and Miller in their individual capacities. *See supra* Section IV.A. and IV.B of this Memorandum. The Court concludes that these claims must be dismissed.

■■■■ In the context of a motion for judgment on the pleadings, under Pennsylvania law to support a claim for defamation plaintiff must allege: (1) a defamatory communication; (2) pertaining to the plaintiff; (3) published by the defendant to a third party; (4) who understands the communication to have defamatory meaning with respect to plaintiff; and (5) that results in plaintiff's injury. *See Mansmann v. Tuman*, 970 F.Supp. 389, 396 (E.D.Pa. 1997) (citing *Petula*, 588 A.2d at 106). An allegation of defamation is subject to a more stringent standard of pleading than is usually the case. *See Manns v. Leather Shop Inc.*, 960 F.Supp. 925, 929 (D.V.I. 1997). The complaint on its face must "specifically identify what allegedly defamatory statements were made by whom and to whom." *Id.* (quoting *Ersek v. Township of Springfield*, 822 F.Supp. 218, 223 (E.D.Pa.1993), *aff'd* 102 F.3d 79 (3d Cir. 1996)); see also 42 Pa.C.S.A. § 8343. It is for the court to determine whether statements complained of by the plaintiff are capable of defamatory meaning. *See Wilson v. Slatalla*, 970 F.Supp. 405 (E.D.Pa. 1997); *Maier v. Maretti*, 448 Pa.Super. 276, 671 A.2d 701 (1995).

■■■■ According to the Complaint, defendants Barr and Miller "made public statements that plaintiff is racist and anti-Semitic which were false and malicious [and] which proximately caused injury to plaintiff's reputation...." *See* Complaint at ¶ 50. There are no other allegations of statements made by those defendants. Such statements, if made, were expressions of opinions. Under Pennsylvania law, only statements of fact can afford a basis for a defamation action; expressions of opinion cannot. *See Parano v. O'Connor*, 433 Pa.Super. 570, 574, 641 A.2d 607, 609 (1994). While the Court acknowledges that a statement that plaintiff is "racist and anti-Semitic," if it was made, would be unflattering, annoying and embarrassing, such a statement does not rise to the level of defamation as a matter of law because it is merely non-fact based rhetoric. *See id.*

■■■■ To the extent plaintiff purports to ground his defamation claim on defendants Barr and Miller's alleged "leak" of plaintiff's letter to Principal Travis, the Court does not find such conduct actionable. Generally, a plaintiff can not be defamed by the use of his own words. *See Johnson v. Overnite Transp. Co.*, 19 F.3d 392, 392 n. 1 (8th Cir.1994) (noting that as a general rule "a defamation claim arises only from a communication by someone other than the person defamed"). That rule is particularly apposite in this case because this aspect of plaintiff's defamation claim is based on a letter he voluntarily wrote to Carver's Principal in which he asked the Principal to take certain action. Implicit in that conduct was the likelihood that the contents of the letter would be published to other persons in an effort to convince them

to adopt plaintiff's views. Under those circumstances, the author's own words can not be defamatory.

*Mansmann v. Tuman,* 970 F.Supp. at 397, is also instructive in connection with plaintiff's defamation claim. In *Mansmann,* the district court dismissed a defamation claim against lawyers for lack of publication where the allegedly defamatory statements were attributable to the lawyers' clients and repeated by the lawyers. With respect to the claim that the "leaking" of the letter by defendant's Barr and Miller in the instant case constitutes defamation, the alleged defamatory statements were made by plaintiff, not the defendants, and thus, under *Mansmann,* they are not actionable because there was no publication.

For the foregoing reasons, plaintiff has failed to state a claim for defamation of character upon which relief can be granted against defendants Barr and Miller in their individual capacities. Thus, the claims against them in Count 4 must be dismissed.

### G. *Count 5—Claims under the First and Fourteenth Amendments v. All School District Defendants*

■ In Count 5 of the Complaint plaintiff purports to bring a direct cause of action under the United States Constitution. However, such claims are impermissible because § 1983 provides an adequate, alternative remedial scheme for plaintiff's alleged constitutional violations. *See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) (noting that when a plaintiff has a remedy under § 1983, it is the exclusive remedy for alleged constitutional violations); *Scott v. Rieht,* 690 F.Supp. 368 (E.D.Pa.1988). Because a direct constitutional action under the First and Fourteenth Amendments is precluded, plaintiff's claims in Count 5 must be dismissed.

### H. *Count 6—Section 1983 Claims v. all School District Defendants*

In Count 6 of the Complaint plaintiff asserts that the School District defendants deprived him of a number of privileges and immunities secured by the Constitution including, but not limited to, "the right to free speech and expression and the right to petition the government for redress of grievances secured by the First Amendment," in violation of § 1983 of the Civil Rights Act of 1871. *See* 42 U.S.C.A. § 1983 (West Supp.1999). The Court has reviewed the pleadings and concludes that one of plaintiff's claims in Count 6 will be allowed to proceed—the claim against the School District defendants on the ground that they retaliated against him for the exercise of his First Amendment right to free speech when they terminated his appointment on Carver's Advisory Panel; the claim of retaliation based on plaintiff's termination as president of Carver's Home and School Association must be dismissed.

■ Section 1983 creates a cause of action against anyone who, acting under color of state law, deprives an individual of rights secured by the Constitution or by federal statute. *See* 42 U.S.C.A. § 1983 (West Supp.1999). In order to state a cause of action under § 1983, a plaintiff must show that "(1) the defendants acted under color of [state] law; and (2) their actions deprived [the plaintiff] of rights secured by the Constitution or federal statutes." *Anderson v. Davila,* 125 F.3d 148, 159 (3d Cir.1997).

The first step to any § 1983 claim "is to identify the specific constitutional right allegedly infringed." *Albright v. Oliver,* 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994). In his Complaint, plaintiff alleges that he was deprived of two constitutionally protected rights—his right to "petition the government for redress of grievances" and his "right to free speech and expression." *See* Complaint at ¶ 52. Plaintiff makes reference to both such rights in the Complaint. However, under the facts of this case the Court concludes

that the claimed retaliation in violation of plaintiff's First Amendment right to petition is subsumed in the claimed retaliation in violation of plaintiff's First Amendment right to free speech.

■ Although plaintiff had a quasi employee-employer relationship with the School District of Philadelphia and the Philadelphia Board of Education as a member of Carver's Advisory Panel[9], he at all times remained a private citizen. To establish a claim that a public official retaliated against a private citizen in violation of the First Amendment, the citizen must establish that: (1) he engaged in conduct or speech protected by First Amendment, (2) that public official took adverse action against citizen, and (3) that the adverse action was prompted or caused by citizen's exercise of First Amendment rights. *See Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir.2000); *Arrington v. Dickerson*, 915 F.Supp. 1516, 1525 (M.D.Ala. 1996).

■ In connection with the first prong of this test, the Court notes at the outset that it does not condone the viewpoints expressed in plaintiff's letter to Principal Travis and in the petitions calling for the removal of certain Carver staff members. Nevertheless, the Court finds that these documents concerned matters of public interest—e.g., the School District and Board of Education's policies regarding the hiring of African–American teachers. As such, these documents were protected by the First Amendment. *See, e.g., Haverkamp v. Unified School Dist. # 380*, 689

F.Supp. 1055, 1058–59 (D.Kan.1986); *Reichert v. Draud*, 511 F.Supp. 679, 682 (E.D.Ky.1981); *Gorham v. Jewett*, 392 F.Supp. 22, 26 (D.Mass.1975). With respect to the second prong of this test, plaintiff contends that the School District defendants unconstitutionally retaliated against him when they: (1) urged his removal as president of Carver's Home and School association and (2) terminated his appointment on Carver's Advisory Panel.

■ The Court concludes that the first alleged incident of retaliation is not actionable. As the School District defendants argue, they did not possess the authority to remove plaintiff from his position as president of the Home and School Association. Rather, as plaintiff acknowledges, he was "elected [to that position] by a vote of parents," Complaint at ¶ 40, and the determination to remove him rested exclusively with the Home and School Association. In urging plaintiff's removal the School District defendants, particularly the Philadelphia Board of Education, Board President Alston, and School Superintendent Hornbeck, were exercising their own protected right to free speech. *See Northeast Women's Center, Inc. v. McMonagle*, 670 F.Supp. 1300, 1308 (E.D.Pa.1987) (noting that "attempts to persuade another to action are clearly within the scope of the First Amendment").

■ The second alleged incident of retaliation, however, is actionable. The Court is mindful that "[l]ocal school boards have broad discretion in the management

---

**9.** The School District defendants did not argue that plaintiff, as a quasi employee of the School District of Philadelphia, was terminated as a member of the Carver Advisory Panel because his views prevented him from performing his duties as a member of that body. Nevertheless, the Court notes that "the determination whether a public employer has properly discharged an employee for engaging in speech requires a balance between the interests of the employee, as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public ser-

vices it performs through its employees." *See Rankin v. McPherson*, 483 U.S. 378, 384, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987).

Arguably, the rationale in *Rankin* is applicable to the letter and petitions at issue in this case. While the Court expresses no opinion on that issue, those documents raise the question whether what was said by plaintiff gave the School District defendants cause to terminate him as a member of the Carver Advisory Panel on the ground, *inter alia,* that the positions advocated by plaintiff potentially exposed the School District defendants to liability.

of school affairs. Federal courts should not ordinarily intervene in the resolution of conflicts which arise in the daily operation of school systems." *See Haverkamp*, 689 F.Supp. at 1058 (D.Kan.1986) (citing *Board of Education v. Pico*, 457 U.S. 853, 102 S.Ct. 2799, 73 L.Ed.2d 435 (1982)). "However, the discretion of local school boards in matters of education must be exercised in a manner consistent with the transcendent imperatives of the First Amendment." *Id.*

The School District defendants do not dispute that they terminated plaintiff as a member of Carver's Advisory Panel. Thus, plaintiff has established that a public official took an adverse action against him.

Finally, the third prong of a First Amendment retaliation claim requires the Court to assess whether plaintiff has established that the adverse action by the public was prompted or caused by his exercise of his First Amendment rights. In this connection, the Court notes the language of the resolution unanimously passed by defendant Philadelphia Board of Education, which states in relevant part:

> Mr. Smith has chosen to express his concerns about Carver High School through a most inflammatory letter to the principal. This letter contained not only prejudicial statements but, was clearly racist and anti-Semitic. In both spirit and word it offends us personally, the entire School District community and all those we serve. In light of these facts, the Board calls upon the Home and School Council to act swiftly and appropriately by removing Mr. Smith as President of the Carver Home and School Association. Furthermore, the Board and the Superintendent are resolved that Mr. Smith shall have no official standing in the School District of Philadelphia from this point forward.

This document links plaintiff's protected speech with the School District defendants' decision to terminate plaintiff's appointment to the Advisory Panel, and plaintiff has adequately attributed this link to all

the School District defendants. *See* Complaint at ¶¶ 43–45.

 The School District defendants incorrectly argue that plaintiff "cannot establish that removal from the [Advisory Panel] was an unconstitutional act .... [because] when there exists no property right in a position, the appointing body may remove incumbents at will." To the contrary, a plaintiff "need not establish an underlying constitutionally-protected property or liberty interest ... in order to pursue [a] First Amendment retaliation claim." *See id.* (citing *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972) (noting that an underlying property interest, while required for a procedural due process claim, is irrelevant to a free speech claim)).

Having determined the specific constitutional right at issue in the case—a retaliation claim based on plaintiff's termination as a member of Carver's Advisory Panel because of the exercise of his First Amendment rights—the Court will now turn to issues regarding the liability of individual School District defendants.

### 1. *The Municipal Defendants and the Individual Defendants in their Official Capacities*

The municipal defendants in the case—that is, the School District of Philadelphia, the Philadelphia Board of Education, and defendants Hornbeck, Alston, Barr and Miller in their official capacities as municipal employees—may only be liable under § 1983 if they caused the complained of constitutional violation. *See Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Baker v. Monroe Twp.*, 50 F.3d 1186, 1191 (3d Cir.1995).

In the context of a motion for judgment on the pleadings, to establish municipal liability under *Monell*, a plaintiff ordinarily must " 'identify the challenged policy, [practice or custom], attribute it to the city itself, and [allege] a causal link between the execution of the policy, [practice or

custom] and the injury suffered.'" *City of Canton, Ohio v. Harris,* 489 U.S. 378, 388–89, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); *Fullman v. Philadelphia Int'l Airport,* 49 F.Supp.2d 434, 445 (E.D.Pa.1999) (quoting *Losch v. Borough of Parkesburg,* 736 F.2d 903, 910 (3d Cir.1984)). "In order to establish a claim based on a policy of inaction ... plaintiffs must allege facts tending to establish a prior pattern of similar violations, contemporaneous knowledge of improper conduct, or failure to remedy continuing constitutional deprivations." *Boemer v. Patterson,* No. Civ.A. 86–2902, 1987 WL 13741, at *4 (E.D.Pa. July 14, 1987).

In rare instances, the Supreme Court has recognized municipal liability under § 1983 based on a single decision attributable to a municipality. *See, e.g., Owen v. Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980); *Newport v. Fact Concerts Inc.,* 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981). The Supreme Court has noted, however, that in such cases, "the evidence that the municipality had acted and that the plaintiff suffered a deprivation of federal rights also proved fault and causation." *Bryan County,* 520 U.S. at 405, 117 S.Ct. 1382.

 Because plaintiff alleges only a single incident of retaliation to support his § 1983 claims—his termination as a member of Carver's Advisory Panel—the Court must determine whether plaintiff has made sufficient allegations of fault and causation. The Court concludes that the pleadings contain such allegations. The allegations relating to the unanimous resolution passed by the Philadelphia Board of Education link plaintiff's protected speech to the School District defendants' decision to terminate him as a member of Carver's Advisory Panel.

For the foregoing reasons, plaintiff's § 1983 claim of retaliation for the exercise of his First Amendment rights against the School District of Philadelphia, the Philadelphia Board of Education, and defendants Hornbeck, Alston, Barr and Miller

in their official capacities as municipal employees, survives the motion for judgment on the pleadings, but only to the extent that it is based on plaintiff's termination as a member of Carver's Advisory Panel.

### 2. The Individual Defendants in their Individual Capacities

 In the context of a motion for judgment on the pleadings, for individual capacity suits under § 1983 against defendants Hornbeck, Alston, Barr and Miller plaintiff must allege that each had "personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior." *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir.1988); *see Parratt v. Taylor,* 451 U.S. 527, 537 n. 3, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). Personal involvement requires participation in, personal direction of, or knowledge of and acquiescence in the alleged constitutional violation. *See Robinson v. City of Pittsburgh,* 120 F.3d 1286, 1293 (3d Cir.1997); *Baker v. Monroe Twp.,* 50 F.3d 1186, 1190–91 (3d Cir.1995). Thus, to state a claim against any of the individual School District defendants in their individual capacities under § 1983 plaintiff must allege participation, personal direction of the complained-of conduct or knowledge of and acquiescence in the complained-of conduct for each defendant; a supervisory relationship with someone who allegedly violated plaintiff's constitutional rights, without more, is insufficient.

 Plaintiff has alleged that the School District defendants in their individual capacities "pressured" the School District of Philadelphia to terminate his appointment to Carver's Advisory Panel. *See* Complaint at ¶¶ 43–45. This constitutes an allegation involving some affirmative conduct on the part of defendants Hornbeck, Alston, Barr and Miller. Therefore, the Court concludes that plaintiff has adequately pled a claim under § 1983 for First Amendment retaliation against defendants Hornbeck, Alston, Barr and Miller in their individual capacities.

I. *Count 7—Claims for Invasion of Privacy v. Defendants Barr and Miller in their Individual Capacities*

In Count 7 plaintiff asserts a claim for invasion of privacy against all School District defendants. In connection with this count, the Court need only consider plaintiff's claims for invasion of privacy against defendants Barr and Miller in their individual capacities. *See supra* Sections IV.A. (ruling that state law claims against the School District of Philadelphia, the Philadelphia Board of Education, and defendants Hornbeck, Alston, Barr and Miller in their official capacities are barred by the Tort Claims Act) and IV.B (ruling that state law claims against defendants Hornbeck and Alston in their individual capacities must be dismissed pursuant to Pennsylvania's common law doctrine of absolute immunity for high public officials). The Court concludes that these claims must be dismissed.

▆▆▆ Under Pennsylvania law, a claim of invasion of privacy can be based on any one of four theories: (1) intrusion upon seclusion; (2) appropriation of name and likeness; (3) publicity given to private life; and (4) publicity placing a person in false light. *See Marks v. Bell Telephone Co. of Pa.*, 460 Pa. 73, 331 A.2d 424 (1975). Plaintiff does not specify the theory of invasion of privacy under which he seeks relief.

The Complaint asserts that "defendants publicized plaintiff's private letter to Carver's principal which created a highly offensive and false impression of plaintiff in the minds of reasonable people, proximately causing damage to plaintiff's reputation and earning power and severe emotional distress to plaintiff." *See* Complaint at ¶ 53. In light of this allegation, the School District defendants contend that plaintiff is claiming invasion of privacy under the theories of "public disclosure of private facts" and "false light." The Court agrees, but concludes that plaintiff failed to state a

claim upon which relief can be granted under those theories.

▆▆▆ With respect to the first theory, the disclosure of plaintiff's letter can not constitute "public disclosure of private facts" because plaintiff's letter was not private. *See Avins v. Moll*, 610 F.Supp. 308, 325 (E.D.Pa.1984), *aff'd* 774 F.2d 1150 (3d Cir.1985). Plaintiff voluntarily sent his letter to Principal Travis, and the contents of the letter addressed issue of public concern—namely, Carver's hiring policies with respect to its teachers and staff. With respect to the second theory, in the context of a motion for judgment on the pleadings to establish a claim of false light plaintiff must allege that the defendant published a false statement and "had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the [plaintiff] would be placed." *Seale v. Gramercy*, 964 F.Supp. 918 (E.D.Pa.1997). Plaintiff has not so alleged with respect to either defendant Barr or defendant Miller.

Moreover, the facts on which plaintiffs claims in Count 7 are based—the publication of plaintiff's own words in his letter—lead the Court to conclude that plaintiff could never state a claim for invasion of privacy upon which relief can be granted. Accordingly, the Court will not grant plaintiff leave to amend the Complaint.

J. *Punitive Damages*

▆▆▆ The final issue the Court must consider relates to plaintiff's claims for punitive damages. *See* Complaint at ¶ 1; *see also* prayer for relief. Because the Court has concluded that only some of plaintiff's § 1983 claims for First Amendment retaliation in Count 6 survive the School District defendants motion for judgment on the pleadings, its discussion of punitive damages is limited to those remaining claims in Count 6. Punitive damages for violations of § 1983 are not available against a municipality or individuals in their official capacity as municipal employees. *See Newport v. Fact Concerts*,

*Inc.,* 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981); *Agresta v. Goode,* 797 F.Supp. 399, 410 (E.D.Pa.1992). Accordingly, plaintiff's claim for punitive damages from the School District of Philadelphia, the Philadelphia School Board and defendants Hornbeck, Alston, Barr and Miller in their official capacities, must be dismissed.

▇▇▇ With respect to plaintiff's claim for punitive damages against defendants Hornbeck, Alston, Barr and Miller in their individual capacities, such damages may be awarded where the defendants have acted wilfully and in gross disregard for the rights of the complaining party, *see Lee v. Southern Home Sites Corp.,* 429 F.2d 290 (5th Cir.1970), or where they have behaved in bad faith or for an improper motive, *see Caperci v. Huntoon,* 397 F.2d 799 (1st Cir.1968). "Since such damages are punitory and are assessed as an example and warning to others, they are not a favorite in law and are to be allowed only with caution and within narrow limits. The allowance of such damages inherently involves an evaluation of the nature of the conduct in question, the wisdom of some form of pecuniary punishment, and the advisability of a deterrent. Therefore, the infliction of such damages, and the amount thereof when inflicted, are of necessity within the discretion of the trier of the fact." *Lee,* 429 F.2d at 294

Plaintiff has alleged unconstitutional conduct by defendants Hornbeck, Alston, Barr and Miller that was "willful, wanton, and reckless." *See* Complaint at ¶¶ 49, 52. As a result, the Court can not dismiss plaintiff's claim for punitive damages against these defendants at this stage of the proceedings, but such claim is limited to plaintiff's only remaining cause of action—his alleged unconstitutional termination as a member of Carver's Advisory Panel in retaliation for the exercise of his First Amendment rights, in violation of § 1983 (Count 6).

## V. CONCLUSION

The Court does not condone the statements contained in plaintiff's letter to Principal Travis, dated January 1, 1998, or in the petitions he circulated calling for the removal of "the white/Jewish teachers" at Carver and their replacement by African–American teachers. That having been said, the issue in the case is not whether the Court or anyone else liked what plaintiff said in the letter and the petitions, or what plaintiff did as President of Carver's Home and School Association and as a member of Carver's Advisory Panel. The issue is whether the conduct of the School District defendants violated any of plaintiff's constitutional rights.

Although the Court granted the School District Defendants' Joint Motion for Judgment on the Pleadings with respect to most of the claims in plaintiff's Complaint, one allegation—and it is just that, an allegation—remains. That is the allegation in the Complaint that the School District defendants unconstitutionally retaliated against plaintiff by terminating his position on the Carver Advisory Panel for exercising his First Amendment right to free speech. Plaintiff will be given an opportunity to prove that allegation, and defendants will be given an opportunity after the completion of relevant discovery to again challenge the claim by motion for summary judgment.

An appropriate Order follows.

### *ORDER*

**AND NOW,** to wit, this 5th day of September, 2000, upon consideration of Defendants'[10] Joint Motion for Judgment on the

---

**10.** Plaintiff originally filed his lawsuit against fourteen defendants. By agreement of the parties, the following originally named defendants were dismissed by this Court's Order dated May 10, 1999 (Doc. 25): National Association for the Advancement of Colored People ("NAACP"); Jerry Mondesire, President of NAACP; Philadelphia Federation of Teachers Local # 3 ("PFT"); Jerry Jordan, PFT Vice President; Jewish Community Relations

Pleadings pursuant to F.R.C.P. 12(c) and 12(h)(2) (Doc. 12, filed Feb. 4, 1999), and Plaintiff's Response to said motion (Doc. 29, filed June 15, 1999), **IT IS ORDERED** that Defendants' Joint Motion for Judgment on the Pleadings is **GRANTED IN PART,** as follows:

1. Plaintiff's state law claims in Counts 2 (intentional infliction of emotional distress), 3 (negligent infliction of emotional distress), 4 (defamation of character) and 7 (invasion of privacy) against the School District of Philadelphia, the Philadelphia Board of Education, and defendants School District Superintendent David Hornbeck, Board of Education President Floyd Alston, PFT Building Representative Avi Barr, and Assistant Principal Steven Miller in their official capacities are **DISMISSED;**

2. Plaintiff's state law claims for intentional torts in Counts 2 (intentional infliction of emotional distress), 4 (defamation of character) and 7 (invasion of privacy) against Defendant School District Superintendent David Hornbeck and Board of Education President Floyd Alston in their individual capacities are **DISMISSED;**

3. Plaintiff's § 1985 claims in Count 1 against defendants School District of Philadelphia, the Philadelphia Board of Education, and defendants School District Superintendent David Hornbeck, Board of Education President Floyd Alston, PFT Building Representative Avi Barr, and Assistant Principal Steven Miller in their individual and official capacities are **DISMISSED;**

4. Plaintiff's claims in Count 2 for intentional infliction of emotional distress against defendants PFT Building Representative Avi Barr and Assistant Principal Steven Miller in their individual capacities are **DISMISSED;**

5. Plaintiff's claims in Count 3 for negligent infliction of emotional distress

against defendants School District Superintendent David Hornbeck, Board of Education President Floyd Alston, PFT Building Representative Avi Barr, and Assistant Principal Steven Miller in their individual capacities are **DISMISSED;**

6. Plaintiff's claims in Count 4 for defamation of character against defendants PFT Building Representative Avi Barr and Assistant Principal Steven Miller in their individual capacities are **DISMISSED;**

7. Plaintiff's claims in Count 5, under the First and Fourteenth Amendments, against defendants School District of Philadelphia, School District Superintendent David Hornbeck, Philadelphia Board of Education, Board of Education President Floyd Alston, PFT Building Representative Avi Barr, and Assistant Principal Steven Miller are **DISMISSED;**

8. Plaintiff's § 1983 claims in Count 6 against defendants School District of Philadelphia, the Philadelphia Board of Education, and defendants School District Superintendent David Hornbeck, Board of Education President Floyd Alston, PFT Building Representative Avi Barr, and Assistant Principal Steven Miller in their individual and official capacities are **DISMISSED** with respect to claims grounded on the following allegations: (a) due process violations; (b) equal protection violations; (c) denial of plaintiff's First Amendment right to petition the government for grievances; and (d) First Amendment retaliation based on plaintiff's removal as president of the Home and School Association;

9. Plaintiff's claims in Count 7 for invasion of privacy against defendants PFT Building Representative Avi Barr and Assistant Principal Steven Miller in their individual capacities are **DISMISSED;** and

10. Plaintiff's claims for punitive damages against the School District of Phila-

---

Council ("JCRC"); Burt Siegal, Executive Director of JCRC; Anti-Defamation League of B'Nai B'rith ("ADL"); Barry Morrison, Regional Director of ADL. The remaining defendants are referred to collectively as the "School District defendants."

delphia, the Philadelphia Board of Education, and defendants School District Superintendent David Hornbeck, Board of Education President Floyd Alston, PFT Building Representative Avi Barr, and Assistant Principal Steven Miller in their official capacities are **DISMISSED.**

**IT IS FURTHER ORDERED** that the School District defendants' Joint Motion for Judgment on the Pleadings is **DENIED** with respect to plaintiff's § 1983 claims in Count 6—against defendants School District of Philadelphia, the Philadelphia Board of Education, and defendants School District Superintendent David Hornbeck, Board of Education President Floyd Alston, PFT Building Representative Avi Barr, and Assistant Principal Steven Miller in their individual and official capacities—that plaintiff was unconstitutionally retaliated against when he was terminated as a member of Carver's Advisory Panel for exercising his First Amendment rights.

**IT IS FURTHER ORDERED** that the School District defendants' Joint Motion for Judgment on the Pleadings is **DENIED** with respect to plaintiff's claims for punitive damages—against defendants School District Superintendent David Hornbeck, Board of Education President Floyd Alston, PFT Building Representative Avi Barr, and Assistant Principal Steven Miller in their individual capacities— on the ground that plaintiff was unconstitutionally retaliated against when he was terminated as a member of Carver's Advisory Panel for exercising his First Amendment rights.

**IT IS FURTHER ORDERED** that the Court's rulings are based on the allegations in the Complaint, and are **WITHOUT PREJUDICE** to the School District defendants' right to challenge plaintiff's § 1983 claims and his claims for punitive damages after completion of relevant discovery and/or at trial.

**IT IS FURTHER ORDERED** that a status conference in Chambers will be scheduled in due course.