Mary SZYDLOWSKI and Greg C. Szydlowski, Plaintiffs,

v.

CITY OF PHILADELPHIA, Officer Keller, Acme Markets, Inc., and Steve Ronan, Defendants.

Civil Action No. 00–CV–1660.

United States District Court, E.D. Pennsylvania.

Feb. 28, 2001.

Bernard M. Gross, Law Offices Bernard M. Gross, P.C., Philadelphia, PA, for Mary Szydlowski, Greg C. Szydlowski.

Christopher N. Tretta, Yost & Tretta, Philadelphia, PA, for Acme Markets, Inc., S. Ronan.

Denise Wolf, Philadelphia, PA, for City of Philadelphia, Officer McKellar.

### MEMORANDUM

JOYNER, District Judge.

Presently before the Court are two separate summary judgment motions, the first brought by Defendant City of Philadelphia, and the second brought by Defendants Acme Markets, Inc. ("Acme") and Steve Ronan ("Ronan"). For the reasons that follow, we will grant both motions.

### BACKGROUND

This case arises from an alleged shoplifting incident at an Acme supermarket in Philadelphia, Pennsylvania. In their Complaint, Plaintiffs Mary and Greg Szydlowski ("Plaintiff") [1] alleged a variety of federal and state law claims stemming from that incident. On October 5, 2000, we granted Acme and Ronan's motion to dismiss, thereby dismissing all 42 U.S.C. § 1983 claims and several common law claims against them. In that same Memorandum, we also granted Philadelphia Police Officer McKellar's ("Officer McKellar") [2] motion to dismiss, thereby dismissing the § 1983 claim premised on the Fourth Amendment and the false arrest and false imprisonment claims against him. As a result, there remain common law assault and battery claims against Acme and Ronan, a § 1983 claim against the City of Philadelphia, and a § 1983 claim premised on other constitutional violations against Officer McKellar. Now Acme, Ronan, and the City of Philadelphia seek summary judgment on the remaining claims against them. [3]

Taken in the light most favorable to Plaintiffs, the relevant facts are as follows. On May 29, 1998, Plaintiff was stopped by Acme store manager Ronan as she was attempting to leave the store. Ronan accused Plaintiff of shoplifting and, after searching her belongings, discovered two items for which she had not paid. After the two items were uncovered, Plaintiff professed that she had forgotten about them and offered to pay the amount due. Ronan rejected Plaintiff's explanation and informed her that the police would be called. While waiting for the police to arrive, Ronan, with the help of several other Acme employees, escorted Plaintiff and her children to the store manager's office. Officers McKellar and Sinibaldy arrived at the store a short time later and placed Plaintiff under arrest.

### DISCUSSION

I. *Legal Standard*

In deciding a motion for summary judgment under Fed.R.Civ.P. 56(c), a court must determine "whether there is a genuine issue of material fact and, if not, whether the moving party is entitled to judgement as a matter of law." *Medical*

---

**1.** For clarity's sake, we will refer to Mary Szydlowski as "Plaintiff."

**2.** Officer McKellar was originally misidentified as Officer Keller.

**3.** Officer McKellar has not joined the City of Philadelphia's instant motion.

*Protective Co. v. Watkins,* 198 F.3d 100, 103 (3d Cir.1999) (internal citation omitted). When making this determination, courts should view the facts, and reasonable inferences drawn therefrom, in the light most favorable to the non-moving party. *See, e.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). For its part, the non-moving party must, through affidavits, admissions, depositions, or other evidence, demonstrate that a genuine issue exists for trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In making its showing, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *id.* at 586, 106 S.Ct. 1348, and must produce more than a "mere scintilla of evidence in its favor" to withstand summary judgement. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the non-moving party fails to create "sufficient disagreement to require submission [of the evidence] to a jury," the moving party is entitled to judgement as a matter of law. *Liberty Lobby,* 477 U.S. at 251–52, 106 S.Ct. 2505.

## II. *Claims Against the City of Philadelphia*

Plaintiff alleges in her Complaint that the City of Philadelphia violated her federally protected civil rights under various amendments of the United States Constitution and § 1983. Specifically, Plaintiff claims that the City of Philadelphia failed to supervise, to discipline, to train, and to test its police officers and, more generally, failed to take adequate hiring and firing precautions. (*See* Compl. at ¶ 19). Beyond these general allegations, however, Plaintiff offers no other evidence or argument regarding municipal liability. As such, Plaintiff has plainly failed to meet her burden with respect to this claim.

Section 1983 liability may be imposed on a municipality when a plaintiff shows that "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible for under § 1983." *Monell v. Department of Social Servs. of New York,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In making its showing, the plaintiff "must identify the challenged policy, attribute it to the city itself, and show a causal link between execution of the policy and the injury suffered." *Telepo v. Palmer Township,* 40 F.Supp.2d 596, 614 (E.D.Pa.1999) (quoting *Losch v. Borough of Parkesburg,* 736 F.2d 903, 910 (3d Cir.1984)).

In this case, Plaintiff provides no evidence whatsoever that would justify imposition of § 1983 liability on the City of Philadelphia. Indeed, Plaintiff does not attempt to raise a genuine issue of material fact or contest summary judgment on this issue in any way. As a result, we will grant the City's Motion.

## III. *Claims Against Acme and Ronan*

Next, Plaintiff alleges common law assault and battery against Acme and Ronan based on the manner in which Plaintiff was searched and detained at the store. According to Plaintiff, after Ronan confronted her, he abruptly dumped the contents of her son's backpack out on the floor and acted "like a crazy man." (Pl. Dep. at 77–78). Plaintiff also states that Ronan was rude and loudly screamed at her during the search. (*Id.* at 78–81). After being searched, Plaintiff was escorted toward the manager's office where she was surrounded by nine Acme employees who prevented her from leaving. (*Id.* at 84–85). She remained surrounded for approximately ten minutes until the police arrived. (*Id.*

at 86). During those ten minutes, Plaintiff "had to beg Mr. Ronan to allow [her] daughter to use the bathroom," which Ronan finally allowed only after several requests. (*Id.* at 85–87). Throughout the entire course of events, Plaintiff claims her children were very upset, crying, and scared. (*Id.* at 77–80, 87).

■ Based on the record evidence, Plaintiff has again failed to meet her burden to withstand summary judgment. "Assault is an intentional attempt by force to do an injury on the person of another, and a battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree on the person." *Renk v. City of Pittsburgh*, 537 Pa. 68, 641 A.2d 289, 293 (1994) (citation omitted). Put another way, an assault is "an act 'intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such contact, and ... the other is thereby put in such imminent apprehension.'" *Sciotto v. Marple Newton Sch. Dist.*, 81 F.Supp.2d 559, 577 (E.D.Pa.1999) (quoting Second Restatement of Torts). A battery, on the other hand, occurs when "a person 'acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such contact, and ... a harmful contact with the person of the other directly or indirectly results.'" *Id.* (same).

■ Here, Plaintiff points to no evidence indicating that Ronan or an Acme employee ever touched her in any way. In addition, nothing in the Plaintiff's deposition testimony could reasonably lead to the conclusion that she was, or believed she was, in imminent apprehension of harmful or offensive contact. To the contrary, the evidence at most indicates an unsettling event where Plaintiff was confronted for shoplifting. Even assuming Ronan and the Acme employees' behavior was as rude and obnoxious as Plaintiff claims, there is no suggestion that Plaintiff ever had a reasonable fear of harmful contact or was actually touched. As a result, Plaintiff has failed to raise any genuine issue of material fact with respect to her assault and battery claims against Acme and Ronan.[4] Accordingly, we will grant Acme and Ronan's Motion.

## IV. *Loss of Consortium*

■ Finally, in Count IV of the Complaint, Co-plaintiff Greg Szydlowski claims loss of consortium stemming from the alleged injuries inflicted upon his wife. It is well-established that, under Pennsylvania law, a spouse's right to recover for loss of consortium derives only from the other spouse's recovery in tort. *See, e.g., Danas v. Chapman Ford Sales, Inc.*, 120 F.Supp.2d 478, 489 (E.D.Pa.2000); *Quitmeyer v. Southeastern Pennsylvania Transportation Authority*, 740 F.Supp. 363, 370 (E.D.Pa.1990). Because we have dismissed all claims against Acme, Ronan, and the City of Philadelphia, the derivative loss of consortium claim against those Defendants must also fail. The loss of consortium claim still remains intact against

---

4. We also note that, even if Plaintiff somehow could meet her burden with respect to the assault and battery claims, Acme and Ronan would be protected by the Pennsylvania Retail Theft Statute, 18 Pa.C.S.A. § 3929(c), (d). As we found in our October 5, 2000 opinion, Acme and Ronan quite obviously had probable cause to stop Plaintiff given that Plaintiff admits that she had two unpaid for items in her possession. In addition, viewing every fact in the light most favorable to Plaintiff, it is equally clear that Plaintiff thereafter was detained in a reasonable manner for a reasonable time. *See id.* Given these facts, Acme and Ronan's conduct is well-within the parameters of the Retail Theft Statute, and therefore, they are immune from civil and criminal liability. *See id.*

Officer McKellar, the substantive claims against whom are not currently before the Court.[5]

## CONCLUSION

An appropriate Order follows.

### *ORDER*

AND NOW, this 26th day of February, 2001, upon consideration of Defendant City of Philadelphia's Motion for Summary Judgment (Document No. 33) and Acme and Ronan's Motion for Summary Judgment (Document No. 36), and Plaintiffs' responses thereto, it is hereby ORDERED that the Motions are GRANTED.

**5.** Because of the parties' previous confusion and the vagueness of the Complaint, we wish to clarify the Court's understanding regarding the remaining claims in this action. As a result of our holding herein, all claims against Acme, Ronan, and the City of Philadelphia have now been dismissed. Plaintiff's action survives with respect to the remaining § 1983 claims (based on constitutional violations other than violations of the Fourth Amendment) and common law claims against Officer McKellar. Because common law claims still exist against Officer McKellar, the loss of consortium claim still survives with respect to him as well. *See Danas,* 120 F.Supp.2d at 489 (noting that loss of consortium claims can be supported by underlying tort claims but cannot be premised on underlying civil rights violations).