Richard ZUGAREK, and Elaine Zugarek, Plaintiffs

v.

SOUTHERN TIOGA SCHOOL DISTRICT; Southern Tioga School District, Board of Education; Albert Lindner; Ronald T. Boyanowski; Roxanne S. Landis; Terry B. Osborne; Dennis B. Crumb; Jeffrey A. Rush; Steven C. Whipple; Michael W. Lemasters; William P. Johnston; Martha Bastian; and William Miller, in their Individual and Official Capacities,[1] Defendants

No. 401CV02090.

United States District Court, M.D. Pennsylvania.

Aug. 22, 2002.

---

1. Defendants Landis, Osborne, Crumb, Rush, Whipple, LeMasters, Bastian, Miller, and Johnston are all members of the Board of Education of the Southern Tioga School District.

John R. Fenstermacher, Mark K. Emery, The Law Offices of Mark K. Emery, Harrisburg, PA, for Plaintiffs.

Ellis H. Katz, Sweet, Stevens, Tucker, & Katz, LLP, New Britain, PA, Jason R. Wiley, Sweet, Stevens, Tucker & Katz, LLP, Doylestown, PA, for Defendants.

### MEMORANDUM

MCCLURE, District Judge.

### BACKGROUND:

On November 5, 2001, plaintiffs Richard Zugarek and Elaine Zugarek, husband and wife, commenced this civil rights action against defendants with the filing of a complaint pursuant to 42 U.S.C. § 1983.[2]

---

2. Throughout this memorandum, the term "plaintiff" refers to Elaine Zugarek.

Plaintiffs' complaint also includes the supplemental state law claims of defamation, intentional infliction of emotional distress, and loss of consortium. Plaintiffs allege that defendants have unfairly subjected plaintiff to a strict evaluation process to which other teachers at the Southern Tioga School District ("the School District") have not been subjected, and that plaintiff has been retaliated against for exercising her First Amendment rights with respect to that process.

On January 2, 2002, defendants moved to dismiss plaintiffs' complaint. That motion was fully briefed by defendants.

On January 4, 2002, plaintiffs filed an amended complaint ("Plaintiffs' Amended Complaint").

By stipulation and order dated January 16, 2002, the court directed that defendants' motion to dismiss filed January 2, 2002 be deemed responsive to Plaintiffs' Amended Complaint filed January 4, 2002 and also be deemed to have been filed on behalf of additional defendants Martha Bastian and William Miller, named in the amended complaint.

On January 22, 2002, plaintiffs filed their brief in opposition to defendants' motion to dismiss.

For the reasons that follow, defendants' motion to dismiss Plaintiffs' Amended Complaint will be granted.

## DISCUSSION:

### I. STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) admits the well-pleaded allegations of the complaint, but denies their legal sufficiency. *Hosp. Bldg. Co. v. Trs. of the Rex Hosp.*, 425 U.S. 738, 740, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976). In reviewing a motion to dismiss under Rule 12(b)(6), the court must accept as true all factual allegations of the complaint and draw all reasonable

inferences in the light most favorable to the plaintiff. *Bd. of Trs. of Bricklayers & Allied Craftsmen Local 6 of New Jersey v. Wettlin Assoc., Inc.*, 237 F.3d 270, 272 (3d Cir.2001) (citation omitted). However, a court "need not accept as true unsupported conclusions and unwarranted inferences." *Doug Grant, Inc. v. Great Bay Casino Corp.*, 232 F.3d 173, 184 (3d Cir. 2000) (citations and internal quotation marks omitted).

"The complaint will be deemed to have alleged sufficient facts if it adequately put the defendants on notice of the essential elements of the plaintiff['s] cause of action." *Langford v. City of Atlantic City*, 235 F.3d 845, 847 (3d Cir.2000). "A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations." *Ramadan v. Chase Manhattan Corp.*, 229 F.3d 194, 195–96 (3d Cir.2000) (citing *Alexander v. Whitman*, 114 F.3d 1392, 1398 (3d Cir.1997)). "The issue [under Rule 12(b)(6)] is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Maio v. Aetna, Inc.*, 221 F.3d 472, 482 (3d Cir.2000) (citations and internal quotation marks omitted). "In order to survive a motion to dismiss, the plaintiff must set forth information from which each element of a claim may be inferred." *Behm v. Luzerne County Children & Youth Policy Makers*, 172 F.Supp.2d 575, 580 (M.D.Pa. 2001) (citing *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir.1993)).

"Confronted with [a 12(b)(6)] motion, the court must review the allegations of fact contained in the complaint; for this purpose the court does not consider conclusory recitations of law." *Commonwealth of Pennsylvania v. PepsiCo, Inc.*, 836 F.2d 173, 179 (3d Cir.1988). "[A] complaint should not be dismissed merely

because a plaintiff's allegations do not support the particular legal theory he advances, for the court is under a duty to examine the complaint to determine if the allegations provide for relief on any possible theory." *Bowers v. Hardwick*, 478 U.S. 186, 201–202, 106 S.Ct. 2841, 92 L.Ed.2d 140 (1986) (citations and internal quotation marks omitted). "The defendant bears the burden of showing no claim has been stated." *Gould Electronics, Inc. v. United States*, 220 F.3d 169, 178 (3d Cir.2000) (citation omitted).

The court looks only to the facts alleged in the complaint and any attachments, without reference to any other parts of the record. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir.1994).

## II. STATEMENT OF FACTS

We accept as true the following factual averments in Plaintiffs' Amended Complaint.

Plaintiff Elaine Zugarek has been employed as a teacher with the School District since September 1991. From 1991 to 1999, plaintiff had been periodically observed and evaluated, receiving a satisfactory review each time.

On or about March 30, 1999, despite such satisfactory reviews, plaintiff was allegedly advised by defendant Lindner, Principal of North Penn High School, that the School District Superintendent, defendant Boyanowski, had decided that the School District was going to "get rid of her." Allegedly, plaintiff was advised that, due to Boyanowski's decision, it would be easiest if plaintiff serve out the remainder of the school year and then leave.

Lindner and Boyanowski placed plaintiff on an improvement plan from March to June of 1999. In the fall of 1999, Lindner purportedly stated to several individuals in the school and general public that they "should not worry about [plaintiff,]" as "she will be gone by October" of that year.

Evaluations and the improvement plan continued to be conducted by Lindner and Boyanowski in the fall of 1999. According to plaintiff, those evaluations utilized standards that were not used in evaluating any other teacher.

Allegedly, Lindner received criticism for his improper evaluation of plaintiff, and embarked on a course of conduct to terminate her employment. On or about January 18, 2000, Boyanowski advised plaintiff that she would be receiving a letter from the School District terminating her employment. On January 21, 2000, when plaintiff arrived at North Penn High School, Lindner escorted her to Boyanowski's office, and, at that time, Lindner and Boyanowski advised plaintiff that she was being suspended, without pay, effective immediately.

In the spring of 2000, the Board of Education of the Southern Tioga School District ("the Board") voted unanimously to terminate plaintiff's employment.

Plaintiff appealed the decision of the Board. As part of that appeal, an arbitration was scheduled. Despite the pending arbitration, which was not completed until May of 2001, the School District, in December of 2000, contacted the State Department of Education to have plaintiff's teaching license suspended. In May of 2001, the arbitration was concluded. Plaintiff's termination was overturned and she was reinstated.

Prior to plaintiff's return to the high school in the fall of 2001, the administration purportedly advised teachers not to associate with plaintiff. Further, upon plaintiff's return to the high school, Lindner began weekly evaluations of plaintiff. However, no other teachers were subject-

ed to weekly evaluations. Lindner and Boyanowski required plaintiff to provide specific and detailed plans of everything that she was going to do in a lesson, and further required plaintiff to follow that plan with no deviation. Purportedly, despite being told not to deviate from the plan, Lindner criticized plaintiff for not varying from the plan as needed. Again, no other teachers were placed on an improvement plan or required to follow such procedures. Plaintiffs allege further that prior to commencing the evaluations, defendants threatened to discharge plaintiff.

Defendants have continued to engage in the evaluation of plaintiff through the fall of 2001 up to and including the date of filing of plaintiffs' complaint. Plaintiff alleges that, although permitted under the plan, she has never been advised as to whether she is improving or not. Plaintiff has responded in writing to every evaluation, stating that "she is being treated differently than other teachers and is being singled out by [ ][d]efendants for disparate treatment and ultimate discharge." The Board, having knowledge of the improvement plan and evaluations of plaintiff, purportedly permitted the actions of the School District to continue.

### III. DEFENDANTS' MOTION TO DISMISS

Plaintiffs' Amended Complaint consists of four counts, including claims of a violation of plaintiff's First Amendment rights under 42 U.S.C. § 1983 (Count I), defamation (Count II), intentional infliction of emotional distress (Count III), and loss of consortium (Count IV).

Defendants move to dismiss Plaintiffs' Amended Complaint on the following grounds: (1) that all claims under Count I should be dismissed against all individually named defendants sued in their official capacities; (2) that plaintiff's speech is not a matter of public concern, and, thus, is not protected under the First Amendment; (3) that plaintiff's due process rights were not violated; (4) that Counts II, III, and IV are barred by the political subdivision Tort Claims Act, 42 Pa. Cons.Stat. Ann. § 8541 against the School District and the Board; (5) that Count II, III, and IV against the individually named Board member defendants and Boyanowski, sued in their individual capacities, are barred by the doctrine of high public official immunity; (6) that plaintiffs have failed to state a claim of defamation; (7) that plaintiffs have failed to state a claim of intentional infliction of emotional distress; (8) that there is no basis to consider a loss of consortium claim deriving from a § 1983 action; and (9) that plaintiffs' claim for punitive damages is improper as against state and local government entities. Defendants['] ... Brief in Support of Their Motion to Dismiss Plaintiffs' Complaint ("Defendants' Brief") (record doc. no. 5) at 5–12.

Before discussing the merits of defendants' motion, we note that plaintiffs have withdrawn all claims under Count I as against all individually named defendants sued in their official capacities; all claims under Counts II, III, and IV as against the School District and the Board; and their request for punitive damages against the School District and the Board. Plaintiffs' Brief in Opposition to Defendants' Motion to Dismiss ("Plaintiffs' Brief") (record doc. no. 11) at 5–6.

We turn now to the merits of defendants' motion as against plaintiffs' remaining claims.

#### 1. Plaintiffs' Retaliation Claims

Count I of Plaintiffs' Amended Complaint alleges that defendants retaliated against plaintiff for her exercise of her First Amendment right to speak openly

and freely "regarding [ ][d]efendants' actions and to exercise her legal rights to due process in litigating her suspension." Plaintiffs' Amended Complaint (record doc. no. 7) at ¶ 53.

Given the facts alleged, the court can only construe plaintiffs' First Amendment claim as defendants have. Specifically, we find that plaintiffs claim that defendants have retaliated against plaintiff as a result of her exercise of her right to free speech in her negative written and verbal responses to the aforementioned evaluation process and improvement plan, as well as her successful utilization of the grievance arbitration procedure.

"A public employee's claim of retaliation for engaging in a protected activity is analyzed under a three-step process." *Green v. Philadelphia Hous. Auth.*, 105 F.3d 882, 885 (3d Cir.1997). A plaintiff must first demonstrate that the activity in question was protected. Second, the plaintiff must show the protected activity was a substantial or motivating factor in the alleged adverse action taken by the employer. Finally, defendants may defeat plaintiff's retaliation claim by demonstrating "that the same action would have been taken even in the absence of the protected activity." *Swineford v. Snyder County*, 15 F.3d 1258, 1269 (3d Cir.1994). *See also Anderson v. Davila*, 125 F.3d 148, 161 (3d Cir.1997).

### a. First Amendment: Freedom Of Speech

■ As noted above, we construe Count I of Plaintiffs' Amended Complaint to allege that plaintiff was wrongfully retaliated against for her negative written and verbal responses to defendants' evaluations of her. In support of their motion to dismiss, defendants argue that plaintiff's responses were merely of personal interest and not on a "matter of public concern,"

and, thus, outside the scope of First Amendment protection.

The United States Supreme Court's holding in *Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), governs our analysis for determining whether plaintiffs have stated a First Amendment claim upon which relief can be granted by alleging adequately that the statements made by plaintiff are protected by the First Amendment. In so determining, we must first ascertain whether the speech alleged touches on a "matter of public concern." *Poteat v. Harrisburg Sch. Dist.*, 33 F.Supp.2d 384, 394 (M.D.Pa. 1999). *See also Azzaro v. County of Allegheny*, 110 F.3d 968, 976 (3d Cir.1997) (citing *Connick*, 461 U.S. at 147–150, 103 S.Ct. 1684). The second inquiry, which we need not reach for purposes of the instant motion, is "whether the government's interest in efficiency or effectiveness outweighs the value of the speech." *Poteat*, 33 F.Supp.2d at 394.

The Third Circuit set forth a thorough standard of review for determining whether speech made by a public employee is a matter of public concern:

'A public employee's speech involves a matter of public concern if it can be fairly considered as relating to any matter of political, social or other concern to the community.' *Green*, 105 F.3d at 885, 885–86 (quoting *Connick*, 461 U.S. at 146, 103 S.Ct. 1684, . . .). In this respect, we focus on the content, form, and context of the activity in question. *Connick*, 461 U.S. at 147–48, 103 S.Ct. 1684, . . .; *Watters [v. City of Philadelphia*, 55 F.3d 886,] 892 [3d Cir.1995]. The content of the speech may involve a matter of public concern if it attempts 'to bring to light actual or potential wrongdoing or breach of public trust on the part of government officials.' *Holder [v. City of Allentown*, 987 F.2d 188,]

195 [3d Cir.1993] (internal quotations and citations omitted); *see also Swineford,* 15 F.3d at 1271 ("[S]peech disclosing public officials' misfeasance is protected.").

*Baldassare v. New Jersey,* 250 F.3d 188, 195 (3d Cir.2001) (finding investigator's speech in connection with his internal investigation of fellow law enforcement officers' alleged buying of previously leased county vehicles at below market price to be matter of public concern). "Disclosing corruption, fraud, and illegality in a government agency is a matter of significant public concern." *Feldman v. Phila. Hous. Auth.,* 43 F.3d 823, 829 (3d Cir.1994) (citation omitted). "[A] court asked whether a public employee's speech related to a matter of public concern must determine whether expression of the kind at issue is of value to the process of self-governance." *Azzaro,* 110 F.3d at 977. Notably, given "the nature of their employment, speech by public employees is deemed to be speech about public concern when it relates to their employment so long as it is not speech 'upon matters of only personal interest.'" *Swineford,* 15 F.3d at 1271 (citation omitted).

In order for the court to best assess the threshold issue of whether plaintiffs have alleged sufficiently a First Amendment claim by claiming that plaintiff's speech is the type that would fall within the ambit of a matter of public concern, we turn to other cases in which speech by other public employees was held to involve matters of public concern. *See Connick,* 461 U.S. at 148–153, 103 S.Ct. 1684 (survey questions circulated by plaintiff assistant district attorney to other employees concerning office transfer policy, office morale, need for grievance committee and level of confidence in supervisors involved personal grievance and not a matter of public concern; one question pertaining to whether employees felt pressure to work in political campaigns did touch on matter of public concern); *Azzaro,* 110 F.3d at 978–79 (county employee's report of sexual harassment by county official's assistant was a matter of public concern because such harassment constituted discrimination by person "exercising authority in name of public official" and "would be relevant to the electorate's evaluation of the performance of the office of an elected official"); *Watters,* 55 F.3d at 895 (employee's statements in newspaper article expressing concern over lack of official policies covering counseling services for employee assistance program at police department involved a matter of public concern); and *Feldman,* 43 F.3d at 829 (former employee's highly critical internal audit report exposing governmental wrongdoing clearly pertained to a matter of public concern).[3]

---

**3.** Additional cases provided by *Watters* found the following speech by public employees to touch upon matters of public concern:

See e.g., *Pickering [v. Bd. of Educ.],* 391 U.S. [563,] 566, 88 S.Ct. 1731, 20 L.Ed.2d 811 [(1968)] ... (letter to the editor criticizing Board of Education's allocation of school funds); *Mt. Healthy [City Sch. Dist. Bd. of Educ. v. Doyle],* 429 U.S. [274,] 282, 97 S.Ct. 568, 50 L.Ed.2d 471 [(1977)] ... (telephone call to a local radio station about memorandum on teacher dress codes); *Zamboni v. Stamler,* 847 F.2d 73, 75 (3d Cir.1988) (public criticism of proposed reorganization of prosecutor's office), ... *Johnson v. Lincoln University,* 776 F.2d 443, 452 (3d Cir.1985) (letters by university professor to accreditation body alleging low academic standards in university); *Czurlanis [v. Albanese],* 721 F.2d [98,] 100–01 [(3d Cir.1983)] (speeches at Board of Chosen Freeholders meetings criticizing practices of Division of Motor Vehicles); *Monsanto v. Quinn,* 674 F.2d 990, 996–97 (3d Cir.1982) (letters to tax commissioner criticizing management of tax division).

55 F.3d at 894.

Review of the aforementioned cases compels the conclusion that plaintiffs' have failed to allege that plaintiff's speech regarding her negative responses to the evaluations conducted by defendants touches on issues clearly relating to matters of legitimate concern to the community. Plaintiffs have not alleged that the content of plaintiff's speech sufficiently relate to any "political, social, or other concern to the community." *Connick,* 461 U.S. at 146, 103 S.Ct. 1684. Furthermore, the statements do not reveal any "corruption, fraud, [or] illegality" on behalf of defendants. *Feldman,* 43 F.3d at 829. As such, we find that plaintiffs have failed to state a First Amendment claim upon which relief can be granted with respect to plaintiff's responses to defendants' evaluation process. Accordingly, defendants' motion to dismiss will be granted with respect to this portion of Count I of Plaintiffs' Amended Complaint.

### b. First Amendment: The Right To Petition

■ Our inquiry into the viability of Count I of Plaintiffs' Amended Complaint does not end there, however, as plaintiffs also assert that defendants have violated plaintiff's First Amendment right to petition by retaliating against her for appealing defendants' termination of her employment. The extent of defendants' argument against all of Count I of Plaintiffs' Amended Complaint is that plaintiff's speech is not protected under the First Amendment as the alleged speech relates solely to "matters of personal interest." Defendants' Brief at 6.

The First Amendment provides, in relevant part, that: "Congress shall make no law ... abridging the freedom of speech, or of the press, or of the right of the people peaceably to assemble, and to peti-

tion the Government for a redress of grievances." *San Filippo v. Bongiovanni,* 30 F.3d 424, 435 n. 12 (3d Cir.1994) (quoting United States Constitution, Amend. I.). In *San Filippo,* the Third Circuit held that the Petition Clause of the First Amendment protects from retaliation a public employee's right to pursue a lawsuit or grievance even if it addresses a matter of private concern as long as it is of the sort that constitutes a "petition" within the meaning of the First Amendment. *Id.* at 441–442. In that case, the court noted that:

> [W]hen government—federal or state—formally adopts a mechanism for redress of those grievances for which government is allegedly accountable, it would seem to undermine the Constitution's vital purposes to hold that one who in good faith files an arguably meritorious "petition" invoking that mechanism may be disciplined for such invocation by the very government that in compliance with the petition clause has given the particular mechanism its constitutional imprimatur.

*Id.* at 442. The court went on to state: "One example of formal governmental adoption of a mechanism for redress of grievances is entry into a collective bargaining agreement that provides for a grievance procedure." *Id.*

Here, plaintiffs argue that defendants have retaliated against plaintiff "due to her exercise of her government-provided right to have her termination overturned through arbitration." Plaintiffs' Brief at 9. Specifically, plaintiff claims that she "was employed pursuant to a collective bargaining agreement which provided an arbitration mechanism," and that "she exercised her right to appeal her termination in ac-

cordance with state law." *Id.* (citing Plaintiffs' Amended Complaint at ¶ 32).

If, by their assertion that plaintiff's speech is not "protected" under the First Amendment, defendants argue that plaintiff's grievance in the form of following the arbitration procedures available to her related solely to a matter of private concern, that argument is foreclosed by the holding in *San Filippo,* 30 F.3d at 441–43. As such, we are left to determine the issue of whether plaintiffs have sufficiently stated a cause of action of First Amendment retaliation under 42 U.S.C. § 1983.

### c. *First Amendment Retaliation: Adverse Employment Action*

"While it is true that the majority of cases involving First Amendment retaliation involve an actual discharge, transfer, demotion or like action, the case law of this circuit indicates that 'retaliatory harassment could, under certain circumstances, constitute an 'adverse employment action' which is actionable under the rubric of a First Amendment cause of action.'" *Kadetsky v. Egg Harbor Township Bd. of Educ.,* 82 F.Supp.2d 327, 337 (D.N.J.2000) (quoting *Rodriguez v. Torres,* 60 F.Supp.2d 334, 348 (D.N.J.1999) (relying on *Anderson v. Davila,* 125 F.3d 148 (3d Cir.1997); *Bradley v. Pittsburgh Bd. of Educ.,* 910 F.2d 1172 (3d Cir.1990); *Bennis v. Gable,* 823 F.2d 723 (3d Cir.1987); *Trotman v. Bd. of Trs. of Lincoln Univ.,* 635 F.2d 216 (3d Cir.1980))). Specifically, " 'a plaintiff may state a cause of action for retaliatory harassment under 42 U.S.C. § 1983 if the court determines that the alleged acts of harassment, when viewed in their totality, are likely to deter a person of ordinary firmness from the exercise of his or her First Amendment rights.'" *Kadetsky,* 82 F.Supp.2d at 337 (quoting *Rodriguez,* 60 F.Supp.2d at 350) (further citation omitted).

We look to the applicable case law as cited by the court in *Rodriguez* in determining whether the conduct complained of by plaintiffs here is the type likely to "deter a person of ordinary firmness from the exercise of his or her First Amendment rights." As explained by *Rodriguez:*

> The first case attempting to delineate the types of conduct sufficient to support a retaliatory harassment claim was the Seventh Circuit's opinion in *Bart v. Telford* [, 677 F.2d 622 (7th Cir.1982) ]. The plaintiff in *Bart* was a city employee who took a leave of absence from her position to run for mayor. After she lost the race, she returned to her position with the city. Plaintiff claimed that the defendants, including the incumbent mayor, subjected plaintiff to a 'campaign of petty harassments' in retaliation for plaintiff's exercise of her First Amendment rights. The plaintiff claimed that the harassment campaign included such things as baseless reprimands and 'holding her up to ridicule for bringing a birthday cake to the office on the occasion of the birthday of another employee although the practice was common and was especially favored.' *Bart,* 677 F.2d at 622. The court reversed the district court's 12(b)(6) dismissal of this claim, stating 'we cannot say as a matter of law that the exercise of First Amendment rights by public employees cannot be deferred by subjecting employees ... to harassment and ridicule.'

60 F.Supp.2d at 348–49. The *Rodriguez* court noted Judge Posner's rationale in *Bart:*

> The effect on freedom of speech may be small, but since there is no justification for harassing people for exercising their constitutional rights it need not be great in order to be actionable. Yet even in the field of constitutional torts de minimis non curat lex .... *It would trivialize*

*the First Amendment to hold that harassment for exercising the right of free speech was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise* .... However, more is alleged here—an entire campaign of harassment which though trivial in detail may have been substantial in gross. [677 F.2d at 625]. *Rodriguez,* 60 F.Supp.2d at 349 (emphasis added). Other circuit cases adopting the *Bart* "standard regarding the threshold of actionability for the alleged acts of harassment under § 1983," *Rodriguez,* 60 F.Supp.2d at 349, include the following: *Colson v. Grohman,* 174 F.3d 498 (5th Cir.1999) (affirming trial court's grant of summary judgment to defendants on plaintiff's retaliatory harassment claim under § 1983; court found that defendants' efforts to have plaintiff, a city counsel member, investigated, prosecuted, humiliated in public, and recalled from her position did not rise to level of harassment sufficient to support a retaliatory harassment claim); *Levin v. Harleston,* 966 F.2d 85, 89 (2d Cir.1992) (where plaintiff, a professor at City University of New York, alleged that defendants retaliated against him for his extracurricular statements involving racially denigrating writings by threatening discipline and also forming "shadow" or "parallel" class sections which students could opt into instead of remaining in plaintiff's class, court found that plaintiff demonstrated a "judicially cognizable chilling effect" on his First Amendment rights); *Agosto–de–Feliciano v. Aponte–Roque,* 889 F.2d 1209, 1217 (1st Cir.1989) (en banc) (adopting standard for retaliation claims short of dismissal or other tangible adverse employment consequences which permits plaintiff to pursue retaliation claim when the employer's challenged actions result in a work situation "unreasonably inferior" to the norm for the position); *Hutt v. Alford,* No. CIV. A. 96–384, 1997 WL 158205, at *3–4 (E.D.Pa. March 27, 1997) (finding that plaintiff, a youth development aide, could not state First Amendment retaliation claim because she made no showing of an "adverse employment action" where sole retaliatory action claimed involved a transfer from one youth residential unit to another; court stated that "complained-of [employer] action must be sufficiently adverse to create an actual or potential chilling effect on the employee's protected speech"). *See also Kadetsky,* 82 F.Supp.2d at 337 (holding that plaintiff, a high school band director, stated sufficiently "adverse employment action" for claim of First Amendment retaliation where alleged retaliatory harassment included claim that school principal, in essence, masterminded false allegations of plaintiff's sexual impropriety with male band student).

Given the aforementioned cases, we find that, in this case, the continuing evaluation process of plaintiff by defendants does not rise to the level of an "adverse employment action" that would deter a person of ordinary firmness from exercising his or her First Amendment rights. Plaintiffs have not alleged, as the plaintiff did in *Bart,* that defendant's actions formed a "campaign" of retaliatory harassment. Further, based on Plaintiffs' Amended Complaint, it is unclear as to how defendants' actions as alleged have had a "chilling effect" on plaintiff's First Amendment rights. Plaintiffs have failed to.allege an actionable First Amendment harm.

Accordingly, defendants' motion to dismiss will be granted with respect to the First Amendment retaliation claim in Count I of Plaintiffs' Amended Complaint.

*2. Plaintiffs' Due Process Claim*

■ As part of Count I, plaintiffs allege that defendants violated plaintiff's procedural due process rights by terminating

her in an arbitrary and capricious manner. Plaintiffs' Brief at 9–10. Additionally, plaintiffs argue that "the arbitration process could not, and clearly has not, protected [plaintiff] from [ ] [d]efendants['] arbitrary and capricious conduct." *Id.* at 10.

The Fourteenth Amendment of the United States Constitution prohibits state deprivation of life, liberty, or property without due process of law. U.S. Const. amend. XIV, § 1. Application of this prohibition requires a " 'familiar two-stage analysis,' " inquiring "(1) whether 'the asserted individual interests are encompassed within the fourteenth amendment's protection of 'life, liberty, or property;' and (2) whether the procedures available provided the plaintiff with 'due process of law.' " *Alvin v. Suzuki,* 227 F.3d 107, 116 (3d Cir.2000) (quoting *Robb v. City of Philadelphia,* 733 F.2d 286, 292 (3d Cir.1984)). *See also Board of Regents v. Roth,* 408 U.S. 564, 569–72, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

"[T]o have a property interest in a benefit that is protected by procedural due process, 'a person clearly must have more than an abstract need or desire for it. [Sh]e must have more than a unilateral expectation of it. [Sh]e must, instead, have a legitimate claim of entitlement to it.' " *Robb,* 733 F.2d at 292 (quoting *Roth,* 408 U.S. at 577, 92 S.Ct. 2701). Cognizable property interests can be created by sources such as state law and implied or express contracts. *Roth,* 408 U.S. at 577–

78, 92 S.Ct. 2701; *see also Nicholas v. Pennsylvania State Univ.,* 227 F.3d 133, 140 (3d Cir.2000) ("[I]t is well-settled that state-created property interests, including some contract rights, are entitled to protection under the procedural component of the Due Process Clause."). "The hallmark of a constitutionally protected property interest is an individual entitlement that cannot be removed except for cause." *Bradley v. Pittsburgh Bd. of Educ.,* 913 F.2d 1064, 1078 (3d Cir.1990) (further citations and internal quotations omitted).

Although not noted specifically, we assume plaintiffs are alleging that plaintiff had a protected property right in her employment as a public school teacher. Notably, however, plaintiffs do not identify any state law or contract right that would create a cognizable property interest for which plaintiff has a legitimate claim of entitlement.[4] We need not reach the "property" issue at this juncture; however, as it is clear that plaintiffs have failed to state a claim of a procedural due process violation since the procedure available, *i.e.,* arbitration, was utilized by plaintiff to challenge her dismissal.[5] In fact, plaintiffs concede that plaintiff "exercised her rights under the state law to appeal the suspension and seek reinstatement." Plaintiffs' Amended Complaint at ¶ 32. On May 16, 2001, the arbitrator ordered that plaintiff be reinstated. Plaintiffs fail to allege that defendants infringed upon a protected

---

**4.** Without deciding the issue, we note that plaintiff's employment with the School District likely constituted a property interest which could not be taken from her without due process, under the Pennsylvania School Code, 24 Pa. Stat. Ann. § 5–514, stating:

> The board of school directors in any school district, except as herein otherwise provided, shall after due notice, giving the reasons therefor, and after hearing if demanded, have the right at anytime to remove any of

its officers, employes [sic], or appointees for incompetency, intemperance, neglect of duty, violation of any of the school laws of this Commonwealth, or other improper conduct.

24 Pa. Stat. Ann. § 5–514. *See also Pedersen v. S. Williamsport Area Sch. Dist.,* 677 F.2d 312, 314 (3d Cir.1982).

**5.** The Third Circuit has held that a grievance arbitration procedure satisfies procedural due process. *Pedersen,* 677 F.2d at 317.

property interest of plaintiff in a manner lacking in procedural fairness. Rather, plaintiffs aver only that: "As determined by the arbitrator, [d]efendants failed to follow the mandated process in suspending [plaintiff], and infringed upon her due process rights by suspending her in a manner contrary to such mandated process." *Id.* at ¶ 54.

Without more, we cannot find that plaintiff has alleged adequately a deprivation of a property interest worthy of procedural due process protection. Accordingly, defendants' motion to dismiss will be granted with respect to any such claim made by plaintiffs in Count I.

### 3. Claims Barred By The Doctrine Of High Public Official Immunity

As noted above, plaintiffs have withdrawn their claims in Counts II, III, and IV (defamation, intentional infliction of emotional distress and loss of consortium claims, respectively) as against the School District and the Board. Counts II, III, and IV remain, then, as against the individually named Board member defendants, Boyanowski, and Lindner. Defendants claim that the claims under Counts II, III, and IV are barred by the doctrine of high public official immunity, as against the individually named Board members and Boyanowski. We agree, and note that defendants do not move to dismiss plaintiffs' claims under Counts II, III, and IV as against Lindner on the basis of high public official immunity.

Pennsylvania common law recognizes the doctrine of absolute immunity for "high public officials." *Smith v. Sch. Dist. of Philadelphia*, 112 F.Supp.2d 417, 425 (E.D.Pa.2000). This doctrine was articulated first in the context of defamation suits based on statements from officials in the course of their official duties and within the scope of their authority. *Id.* The

doctrine has been extended outside the context of defamation, including retaliatory discharge, *loss of consortium*, invasion of privacy, and *intentional infliction of emotional distress*. *Kelleher v. City of Reading*, No. CIV. A. 01–3386, 2001 WL 1132401, at *4 (E.D.Pa. Sept. 24, 2001) (citing, *inter alia*, *Ballas v. City of Reading*, 2001 WL 73737, at *10–11 (E.D.Pa. Jan. 25, 2001); *Smith*, 112 F.Supp.2d at 425–26) (emphasis added).

"An official's status as a high public official for purposes of absolute immunity is determine on a case-by-case basis, and depends on the nature of his duties, the importance of his office, and particularly whether or not he has policymaking functions." *Kelleher*, 2001 WL 1132401, at *4 (citation and internal quotation marks omitted). School Board members, entrusted with a policymaking role for the School District, are high public officials entitled to absolute immunity from state law suits when acting in their official capacities. *Jackson v. Coatesville Area Sch. Dist.*, No. CIV. A. 99–1495, 2000 WL 1185375, at *9 (E.D.Pa. Aug. 21, 2000) (citing *Matta v. Burton*, 721 A.2d 1164, 1166 (1998)). *See also Poteat*, 33 F.Supp.2d at 396 (citing *Lindner v. Mollan*, 544 Pa. 487, 677 A.2d 1194 (1996)). Additionally, "Pennsylvania courts have recognized that school superintendents . . . qualify as high public officials for purposes of this common law doctrine." *Smith*, 112 F.Supp.2d at 425 (further citation omitted).

Plaintiffs argue that, even if the individually named Board members and Boyanowski are considered "high public officials" for purposes of the first area of inquiry in determining absolute immunity, the second area of inquiry—pertaining to whether the alleged conduct fell within the course of defendants' duties or scope of authority—"cannot be answered at this time." Plaintiffs' Brief at 12.

Upon review of Plaintiffs' Amended Complaint, the alleged conduct of the individual Board members and Boyanowski is within the course of defendants' duties or scope of authority. Stated another way, plaintiffs have not alleged any facts that would indicate that the conduct complained of involving Boyanowski or the Board members fell outside the ambit of the scope of their public duties. As such, Boyanowski and the Board members are entitled to absolute high public official immunity from the claims asserted under Counts II, III, and IV of Plaintiffs' Amended Complaint. Plaintiffs have failed to state a claim upon which relief can be granted with respect to those counts as against Boyanowski and the individually named Board member defendants. Defendants' motion to dismiss will be granted accordingly.

### 4. Plaintiffs' Defamation Claim

■ In Count II, plaintiffs assert a claim of defamation. Defendants argue that plaintiffs' defamation claim must be dismissed because the elements of a defamation claim have not been set forth with specificity with respect to "what was said and to whom it was said." Defendants' Brief at 10.

Under the laws of the Commonwealth of Pennsylvania, the elements of a defamation claim are: (1) the defamatory character of the communication; (2) its publication by the defendant; (3) its application to the plaintiff; (4) the understanding by the recipient of its defamatory meaning; and (5) the understanding by the recipient of it as intended to be applied to the plaintiff. *Tucker v. Fischbein,* 237 F.3d 275, 281 (3d Cir.2001) (citing 42 Pa. Cons.Stat. Ann. § 8343(a) (1998)).

"An allegation of defamation is subject to a more stringent standard of pleading than is usually the case." *Smith,* 112 F.Supp.2d at 429 (citation omitted). "The complaint on its face must specifically identify what allegedly defamatory statements were made by whom and to whom." *Id.* (citation and internal quotation marks omitted). Moreover, "[i]t is for the court to determine whether statements complained of by the plaintiff are capable of defamatory meaning." *Id.* (citing *Wilson v. Slatalla,* 970 F.Supp. 405 (E.D.Pa.1997); *Maier v. Maretti,* 448 Pa.Super. 276, 671 A.2d 701 (1995)). In Pennsylvania, a defamatory statement is one that " 'tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.' " *Remick v. Manfredy,* 238 F.3d 248, 261 (3d Cir.2001) (quoting *Tucker,* 237 F.3d at 282) (further citation omitted).

In this case, plaintiffs' defamation claim hinges on the allegation that "Mr. Lindner advised several individuals in the school and the general public that they should not worry about [plaintiff][,] as she will be gone by October." Plaintiffs' Amended Complaint at ¶ 23. More specifically, plaintiffs claim that "[d]efendants have made defamatory statements, accusing [plaintiff] of misconduct[,] stating publicly that she will be suspended." *Id.* at ¶ 59.

Plaintiffs, ambiguously claiming that Lindner made allegedly defamatory statements to "several individuals" and "the general public," fail to identify specifically to whom Lindner made the allegedly statements. Without more, we cannot automatically infer publication of any statement made by Lindner, and, consequently plaintiffs have failed to set forth information from which the second element of a claim of defamation may be inferred. Accordingly, plaintiffs have failed to state a claim of defamation upon which relief can be granted. *See Behm,* 172 F.Supp.2d at 580. Defendants' motion to dismiss Plaintiffs'

Amended Complaint will be granted with respect to Count II.

### 5. Plaintiffs' Claim Of Intentional Infliction Of Emotional Distress

In Count III of their amended complaint, plaintiffs assert a claim of intentional infliction of emotional distress. Defendants move to dismiss Count III of Plaintiffs' Amended Complaint on the ground that "none of the allegations against the individual[ ] [d]efendants establish the requisite intent or the necessary level of misconduct." Defendants' Brief at 11.

■ "The tort of intentional infliction of emotional distress is defined under Pennsylvania law as '[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.'" *Dixon v. Boscov's Inc.*, No. CIV. A. 02–1222, 2002 WL 1740583, at *3 (E.D.Pa. July 17, 2002) (quoting *Shaner v. Synthes*, 204 F.3d 494, 507 (3d Cir.2000) (quoting *Hoy v. Angelone*, 554 Pa. 134, 720 A.2d 745, 753 (1998) (quoting Restatement (Second) of Torts § 46))).[6] "'[C]ourts have been chary to allow recovery for a claim of intentional infliction of emotional distress. Only if conduct which is extreme or clearly outrageous is established will a claim be proven.'" *Dixon*, 2002 WL 1740583, at *3 (quoting *Shaner*, 204 F.3d at 507) (further citation omitted). Stated another way, "[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Fox v. Horn*, No. CIV. A. 98–5279, 2000 WL 49374, at *9 (E.D.Pa. Jan. 21, 2000). Additionally, a complaint of intentional infliction of emotional distress must allege physical injury, harm, or illness caused by the defendant's conduct. *Rolla v. Westmoreland Health Sys.*, 438 Pa.Super. 33, 651 A.2d 160, 163 (1994). *See also Zieber v. Bogert*, 565 Pa. 376, 773 A.2d 758, 762 (2001); *Simmons v. Pacor, Inc.*, 543 Pa. 664, 674 A.2d 232, 238 (1996) ("It is the general rule of this Commonwealth that there can be no recovery for damages for injuries resulting from fright or nervous shock or mental or emotional disturbances or distress mental or emotional distress unless they are accompanied by physical injury or physical impact.").

■ Plaintiffs' argument in opposition to defendants' motion to dismiss Count III of Plaintiffs' Amended Complaint consists of nothing more than the conclusory statement that: "[W]hat [plaintiff] must do is establish that there exists some set of facts which could ultimately lead to a claim [of intentional infliction of emotional distress] for which relief can be granted. The [Amended] Complaint meets such requirement." Plaintiffs' Brief at 14. In their amended complaint, and with respect to Count III, plaintiffs aver that "[d]efendants' actions, as set forth [in the Amended Complaint], were intentionally and recklessly done in order to cause [plaintiffs] emotional distress." Plaintiffs' Amended Complaint at ¶ 64. Further, plaintiffs claim that "[d]efendants' actions

---

6. As pointed out by the court in *Dixon*, the Third Circuit Court of Appeals "has noted that the Pennsylvania Supreme Court has not explicitly adopted the Restatement; however, the court assumed the existence of the tort and appeared to have relied on the Restatement." 2002 WL 1740583, at *3 n. 6 (citing *Shaner*, 204 F.3d at 508 n. 18; *Hoy*, 720 A.2d at 753 n. 10).

have caused [p]laintiffs to suffer both emotional and physical harm." *Id.* at ¶ 65.

Aside from the aforementioned bald allegation that plaintiffs have suffered emotional and physical harm, the complaint fails to allege with specificity any physical injury, illness, or harm suffered by plaintiffs. Moreover, as alleged, the conduct of defendants does not rise to the level of egregiousness or outrageousness necessary to state a claim of intentional infliction of emotional distress. Accordingly, defendants' motion to dismiss Plaintiffs' Amended Complaint will be granted with respect to Count III.

### 6. *Plaintiffs' Loss Of Consortium Claim*

In Count IV of Plaintiffs' Amended Complaint, Richard Zugarek asserts a claim for loss of consortium stemming from the alleged injuries inflicted upon his wife.

It is well-settled that, under Pennsylvania law, a spouse's right to recover for loss of consortium derives only from the other spouse's recovery in tort. *Szydlowski v. City of Philadelphia,* 134 F.Supp.2d 636, 639 (E.D.Pa.2001) (citing *Danas v. Chapman Ford Sales, Inc.,* 120 F.Supp.2d 478, 489 (E.D.Pa.2000); *Quitmeyer v. Southeastern Pennsylvania Transp. Auth.,* 740 F.Supp. 363, 370 (E.D.Pa.1990)).

Because plaintiffs' defamation and intentional infliction of emotional distress claims will be dismissed, so too will plaintiffs' derivative loss of consortium claim. Defendants' motion to dismiss will be granted with respect to Count IV of Plaintiffs' Amended Complaint.

### 7. *Plaintiffs' Claim For Punitive Damages*

Given that plaintiffs' substantive claims against defendants will be dismissed, and in light of the fact that a punitive damages claim cannot stand independent of an un-derlying substantive claim, *See Elliott v. State Farm Mut. Auto. Ins. Co.,* 786 F.Supp. 487, 491 (E.D.Pa.1992), plaintiffs' punitive damages claim will be dismissed. *See also Roberts v. Toal,* No. CIV. A. 94–CV–0608, 1997 WL 83748, at * 19 (E.D.Pa. Feb. 20, 1997).

### IV. CONCLUSION

Based on the foregoing, defendants' motion to dismiss will be granted pursuant to Fed.R.Civ.P. 12(b)(6), and the clerk will be directed to close the case file.

An order consistent with this memorandum will issue.

### ORDER

For the reasons set forth in the accompanying memorandum,

**IT IS ORDERED THAT:**

1. Defendants' motion to dismiss plaintiffs' complaint (record doc. no. 5, filed January 2, 2002) is granted pursuant to Fed.R.Civ.P. 12(b)(6).

2. The complaint is dismissed, in its entirety.

3. The clerk is directed to close the case file.